RECEIVED
APR 2 4 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Sylvester Cain
215 E Bertrand
Saint Marys Kansas 66536
785-437-3787

UNITED STATES DISTRICT COURT
IN THE DISTRICT OF COLUMBIA

Sylvester Cain,

         Plaintiff(s),

Case No. **1:06cv00132**

v.

United States

         Defendant.

**DEFENDANT'S BRIEF IN SUPPORT OF OBJECTION TO ADMISSION OF**

**DEFENDANT'S COMPUTER "EVIDENCE"**

**I. INTRODUCTION**

1.    The weight of authority in the federal appellate courts is that a foundation must be laid for the introduction of computer "business records"; see United States v. DeGeorgia, 429 F.2d 889 (9th Cir., 1969); United States v. Dioguardi, 428 F.2d 1033 (2nd Cir., 1970); United States v. Russo, 480 F.2d 1228 (6th Cir., 1973); Regents of University of Colorado v. K.D.I. Precision Products, Inc., 488 F.2d 261 (10th Cir., 1973); United States v. Fendley, 522 F.2d 181 (5th Cir., 1975); United States v. Scholle, 553 F.2d 1109 (8th Cir., 1977); United States v. Ruffin, 575 F.2d 346 (2nd Cir., 1978); United States v. Weatherspoon, 581 F.2d 595 (7th Cir., 1978); Rosenberg v. Collins, 624 F.2d 659 (5th Cir., 1980); Capital Marine Supply, Inc. v. M/V Roland Thomas, II, 719 F.2d 104 (5th Cir., 1983); United States v. Young Bros., Inc., 728 F.2d 682 (5th Cir., 1984); United States v. Sanders, 749 F.2d 195 (5th Cir., 1984);

United States v. Croft, 750 F.2d 1354 (7th Cir., 1984); United States v. Glasser, 773 F.2d 1553 (11th Cir., 1985); United States v. Alexander, 789 F. 2d 1046, 1049 (4th Cir., 1986); United States v. Hutson, 821 F.2d 1015 (5th Cir., 1987); and United States v. Catabran, 836 F.2d 543 (9th Cir., 1988). See also annotation at 7 A.L.R. 4th 8, entitled "Admissibility of computerized private business records."

2.  Counsel for the United States is well aware of the standards the defense must meet in establishing a proper foundation for the admission of computer evidence. In discussing a number of the authorities cited above, SEE: "Searching and Seizing Computers and Obtaining Electronic Evidence in Criminal Investigations," § V, Part B, Subpart 2, "Establishing the Reliability of Computer Programs", Counsel's employer has admitted:

> The authenticity of computer-generated records sometimes implicates the reliability of the computer programs that create the records. For example, a computer-generated record might not be authentic if the program that creates the record contains serious programming errors. If the program's output is inaccurate, the record may not be "what its proponent claims" according to Fed. R. Evid. 901.

As acknowledged by Counsel's employer, Ibid,

> The courts have indicated that the government can overcome this challenge so long as the government provides sufficient facts to warrant a finding that the records are trustworthy and the opposing party is afforded an opportunity to inquire into the accuracy thereof[.] United States v. Briscoe, 896 F.2d 1476, 1494-95 (7th Cir. 1990). See also United States v. Oshatz, 912 F.2d 534, 543 (2d Cir. 1990) (stating that defense should have sufficient time to check the validity of a program and cross-examine government experts regarding error in calculations); Liebert, 519 F.2d at 547 [cited]; DeGeorgia, 420 F.2d. at 893 [cited] n.11. Cf. Fed. R. Evid. 901(b)(9) (indicating that matters created according to a process or system can be authenticated with "[e]vidence describing a process or system used . . . and showing that the process or system produces an accurate result"). In most cases, the reliability of a computer program can be established by showing that users of the program actually do rely on it on a regular basis, such as in the ordinary course of business. See, e.g., Salgado, 250 F.3d at 453 (holding that "evidence that the computer was sufficiently accurate that the company relied upon it in conducting its business" was sufficient for establishing trustworthiness); United States v. Moore, 923 F.2d 910, 915 (1st Cir. 1991) ("[T]he ordinary business circumstances described suggest trustworthiness, .

. . at least where absolutely nothing in the record in any way implies the lack thereof.") (computerized tax records held by the I.R.S.); Briscoe, 896 F.2d at 1494 (computerized telephone records held by Illinois Bell). When the computer program is not used on a regular basis and the government cannot establish reliability based on reliance in the ordinary course of business, the government may need to disclose "what operations the computer had been instructed to perform [as well as] the precise instruction that had been given" if the opposing party requests. United States v. Dioguardi, 428 F.2d 1033, 1038 (C.A.N.Y. 1970) [cited]. Notably, once a minimum standard of trustworthiness has been established, questions as to the accuracy of computer records "resulting from . . . the operation of the computer program" affect only the weight of the evidence, not its admissibility. United States v. Catabran, 836 F.2d 453, 458 (9th Cir. 1988) [cited].

3. The necessity for laying a foundation for the receipt of computer generated evidence was the subject of United States v. Russo, 480 F.2d 1228 (6th Cir., 1973). In commenting upon that necessity, the Russo court cited United States v. DeGeorgia, 420 F.2d 889 (9th Cir., 1969) (each cited by Plaintiff, and in Department of Justice's document above) and stated:

"As the opinion points out, the foundation for admission of such evidence consists of showing the input procedures used, the tests for accuracy and reliability and the fact that an established business relies on the computer records in the ordinary course of carrying on its activities. The defendant then has the opportunity to cross-examine concerning company practices with respect to the input and as to the accuracy of the computer as a memory bank and the retriever of information. The concurring opinion in DeGeorgia emphasized the necessity that the court 'be satisfied with all reasonable certainty that both the machine and those who supply its information has performed their functions with utmost accuracy' .... This opinion goes on to say that the trustworthiness of the particular records should be ascertained before they are admitted and that the burden of presenting an adequate foundation for receiving the evidence should be on the party seeking to introduce it rather than upon the party opposing its introduction," 480 F.2d, at 1241.

4. This same precise issue arose in United States v. Liebert, 519 F.2d 542 (3rd Cir., 1975), cited in Department of Justice's "Establishing the Reliability of Computer Programs". In Liebert's case, the District Court dismissed the prosecution for failure to permit discovery. In addressing this issue on the government's appeal, the Third Circuit held:

"...a computer printout is admissible...provided that the party offering the computer information lays a foundation sufficient to warrant a finding that such information

is trustworthy and the opposing party is given the same opportunity to inquire into the accuracy of the computer and its input procedures as he has to inquire into the accuracy of written business records. A party seeking to impeach the reliability of computer evidence should have sufficient opportunity to ascertain by pre-trial discovery whether both the machine and those who supply it with data input and information have performed their tasks accurately." 519 F.2d, at 547, 548.

5. Thus, it is quite clear from well established case authority that everything relevant to the operations of IRS' computers bears upon admissibility of printouts therefrom.

## II. GOVERNMENT ACCOUNTING OFFICE: IRS COMPUTER RECORDS UNRELIABLE

6. Based upon the published reports of the United States Government Accounting Office[1] spanning more than a decade, the computer records to which Counsel purports to testify fail to meet the evidentiary requirements detailed in Department of Justice's own analysis, in Russo, and in Liebert, to wit:

" accuracy and reliability

"actual reliance on the computer records in the ordinary course of carrying on its activities

"       input accuracy, and,

"       trustworthiness of the particular records

7. The Court shall take Judicial Notice of GAO-06-137, IRS'S FISCAL YEARS 2005 AND 2004 FINANCIAL STATEMENTS:

> The issues that we have identified and discuss in this report relate to IRS's controls over (1) financial reporting, (2) unpaid assessments,(3) federal tax revenue and refunds, and (4) information security. Ibid., p. 125.

8. In respect of ISSUE # 4, GAO-06-137 went on to say:

---

[1] renamed the Government Accountability Office in the Human Capital Reform Act of 2004, Pub. L. 108-271, 118 Stat. 811.

> While IRS has corrected many previously identified information security weaknesses, we continued to observe weaknesses identical or very similar to those we previously identified, in addition to several new ones. Collectively, these problems represent a material weakness in IRS's internal controls over information systems and data. Specifically, the continuing and newly identified weaknesses increase the risk that data processed by IRS's computer systems are not reliable. *** Until IRS successfully manages its information security risks, management will not have assurance of the integrity and reliability of the information generated from the new financial management systems. Ibid., pp, 137, 138.

9. The material weaknesses regarding information security identified by the Government Accountablity Office in GAO-06-137 are ongoing.

> As we noted in last year's report,[2] during fiscal year 2005, IRS's general ledger system was not supported by adequate audit trails or integrated with its supporting records for material balances, including federal tax revenue, federal tax refunds, taxes receivable, and property and equipment (P&E). Because of these deficiencies, IRS's general ledger system does not conform to the U.S. Government Standard General Ledger (SGL) at the transaction level as required by the Core Financial System Requirements of the Joint Financial Management Improvement Program (JFMIP)3 or the requirements of the Federal Financial Management Improvement Act of 1996 (FFMIA). Further, IRS's use of two separate general ledgers, one to account for its tax administration activities and another to capture the costs of conducting those activities, greatly complicates efforts to measure the cost of IRS's tax administration efforts. Ibid, p. 126

10. The "last year's report" identified in footnote 2 of GAO-06-137 is GAO-05-103, IRS'S FISCAL YEARS 2004 AND 2003 FINANCIAL STATEMENTS, from which GAO language first quoted above might well have been copied:

> The issues that we have identified and discuss in this report relate to IRS's controls over (1) financial reporting, (2) unpaid assessments, (3) federal tax revenue and refunds, and (4) information security. GAO-05-103, p. 130.

11. Discussing prior years' deficiencies in IRS data management, GAO-05-103 noted:

> A consequence of the inadequacies in IRS's risk management activities we observed during our audit is the pervasiveness of its information security weaknesses-both old and new-which continue to impair the agency's ability to ensure the confidentiality, integrity, and availability of financial and sensitive data. GAO-05-103, p. 141

12. In terms nearly identical to those used in the current fiscal year's Report, GAO-05-103

stated:

> We observed that IRS had corrected many technical weaknesses in its computer systems that were previously identified. However, identical or very similar technical weaknesses continue to be observed, in addition to several newly identified weaknesses. Collectively, these problems represent a material weakness in IRS's internal controls over information systems and data. Specifically, the continuing and newly identified weaknesses decreased assurances regarding the reliability of the data processed by the systems...*** Until IRS successfully manages its information security risks, management will not have assurance over the integrity and reliability of the information that will be generated from the new financial management systems.

13. Footnoted in GAO-05-103 is GAO-04-126, IRS'S FISCAL YEARS 2003 AND 2002 FINANCIAL STATEMENTS, where the identical language is again found:

    > The issues that we have identified and discuss in this report relate to IRS's controls over (1) financial reporting, (2) unpaid assessments, (3) federal tax revenue and refunds, and (4) information security. GAO-04-126, p. 119.

14. As in fiscal 2006 and fiscal 2005, GAO found, in fiscal 2004:

    > Collectively, these problems indicate material weaknesses in IRS's internal controls over information systems and data. These weaknesses decreased the reliability and increased the vulnerability of data processed by the systems. Until IRS can adequately mitigate these weaknesses, unauthorized individuals could gain access to critical hardware and software and intentionally or inadvertently access, alter, or delete sensitive data or computer programs. Ibid., p. 131.

15. As in fiscal 2006 and fiscal 2005, GAO-04-126 noted in fiscal 2004:

    > We reported on each of these issues last year1 and in prior audits. Ibid., p. 119.

16. In a slight change of language, GAO-03-243, IRS'S FISCAL YEAR 2002 AND 2001 FINANCIAL STATEMENTS (footnoted in GAO-04-126, at p. 119) had again reported:

    > The issues that we have identified and discuss in this report relate to IRS's controls over (1) financial reporting,(2) unpaid assessments, (3) federal tax revenue and refunds, (4) property and equipment, and (5) computer security. GAO-03-243, p. 105.

17. And, as in every subsequent year, GAO-03-243 found:

>Collectively, these problems indicate material weaknesses in IRS's internal controls over information systems and data. These weaknesses decreased the reliability and increased the vulnerability of data processed by the systems. Until IRS can adequately mitigate these weaknesses, unauthorized individuals could gain access to critical hardware and software, and intentionally or inadvertently access, alter, or delete sensitive data or computer programs. GAO-03-243, p. 119.

18. Once again, as in every subsequent report, GAO-03-243 acknowledged:

>We reported on each of these issues last year.[7] GAO-03-243, p. 105.

19. GAO-03-243's footnote 7 identified GAO-02-414, IRS'S FISCAL YEAR 2001 AND 2000 FINANCIAL STATEMENTS, containing another slight change of language:

>The issues that we have identified and discuss in this report relate to IRS's controls over (1) financial reporting, (2) management of unpaid assessments, (3) federal tax revenue and refunds, (4) property and equipment, (5) budgetary activity, and (6) computer security. GAO-02-414, p. 90.

20. In reporting on IRS's ongoing "pervasive financial reporting weaknesses," GAO-02-414 stated:

>Specifically...IRS must apply statistical sampling and projection techniques to data in its master files16   GAO-02-414, p. 95.

Footnoting,

>However, the master files do not contain all the details necessary to properly classify or estimate collectibility for unpaid assessment accounts.

21. As in each subsequent year, GAO-02-414 acknowledged:

>We reported on each of these issues last year.[9] GAO-02-414, p. 90.

22. GAO-02-414's footnote 9 identified GAO-01-394, IRS' FISCAL YEAR 2000 FINANCIAL STATEMENTS. In GAO-01-394, the language is once again found:

>The issues that we have identified and discuss in this report relate to IRS' controls over (1) the financial reporting process, (2) management of unpaid assessments, (3) refunds, (4) property and equipment, (5) budgetary activities, and (6) computer security. GAO-01-394, p. 84

23. GAO-01-394 reported:

> In fiscal year 2000, as in prior years, IRS did not have adequate internal controls over its financial reporting process. IRS was unable to routinely, reliably, and timely generate the information needed to prepare its financial statements and manage operations on an ongoing basis.

24. GAO-01-394 further reported:

> IRS' general ledger system...(2) is not current or accurate.

25. As in F/Y 2006, F/Y 2005, F/Y 2004, F/Y 2002, GAO-01-394 admitted:

> We reported on each of these issues last year.1  GAO-01-394, p.84

26. GAO-01-394 identified, in its first footnote, "FINANCIAL AUDIT: IRS' FISCAL YEAR 1999 FINANCIAL STATEMENTS (GAO/AIMD-00-76)".

27. GAO's FINANCIAL AUDIT: IRS' FISCAL YEAR 1999 FINANCIAL STATEMENTS (GAO/AIMD-00-76) found:

> IRS continues to face the pervasive systems and internal control weaknesses we have been reporting each year since we began auditing IRS' financial statements in fiscal year 1992.[2]  Letter To the Commissioner of Internal Revenue, GAO/AIMD-00-76, p. 6.

28. The "pervasive systems and internal control weaknesses" GAO reported since fiscal year 1992 have varied, but still include the unreliability of IRS computer data:

> The material weaknesses we have identified relate to IRS' controls over (1) the financial reporting process,(2) management of unpaid assessments, (3) refunds, (4) fund balance with Treasury, (5) property and equipment, (6) budgetary activities, and (7) computer security.  GAO/AIMD-00-76, p. 10.

29. As of GAO/AIMD-00-76:

> The key issues IRS faces include...deficiencies in computer security controls that may allow unauthorized individuals to access, alter, or abuse proprietary IRS programs and electronic data and taxpayer information...  Letter To the Commissioner of Internal Revenue,GAO/AIMD-00-76, p. 7.
>
> IRS did not always...(3) optimally configure system software to ensure the security

and integrity of system programs, files, and data. GAO/AIMD-00-76, p. 23.

30. Notwithstanding its own reference to the "pervasive systems and internal control weaknesses we have been reporting each year since ... fiscal year 1992" GAO/AIMD-00-76 specifies:

> [W]e reported on these issues last year.8  GAO/AIMD-00-76, p. 10

31. GAO/AIMD-00-76 identifies, in footnote 8, GAO/AIMD-99-75, IRS FISCAL YEAR 1998 FINANCIAL STATEMENTS, which stated, in slightly less stringent terms:

> In summary, pervasive weaknesses in the design and operation of IRS' financial management systems, accounting procedures, documentation, recordkeeping, and internal controls, including computer security controls, prevented IRS from reliably reporting on the results of its administrative activities. GAO/AIMD-99-75, p.7.

32. GAO/AIMD-99-75 found:

> IRS cannot provide reasonable assurance that (1) government assets, taxpayer funds, and confidential taxpayer information are appropriately safeguarded, (2) laws and regulations material to the principal financial statements are complied with, and (3) financial or budgetary information reported by IRS is accurate, timely, and meaningful to users. GAO/AIMD-99-75, p.9.

33. GAO/AIMD-99-75 elaborated:

> IRS' complex and often manual financial reporting process requires extensive technical computer and accounting expertise, and is highly vulnerable to human error. GAO/AIMD-99-75, p.14.

34. GAO/AIMD-99-75 revealed:

> As we have previously reported,[15] IRS does not have a detailed listing, or subsidiary ledger, which tracks and accumulates unpaid assessments and their status16 on an ongoing basis.
>
> *****
>
> To compensate for the lack of a subsidiary ledger, IRS runs computer programs against its master files to identify, extract, and classify the universe of unpaid assessments for financial reporting purposes. However, this approach is only designed for the limited purpose of allowing IRS to report auditable financial statement totals at year-end, and is not an adequate substitute for a reliable subsidiary ledger which provides an accurate outstanding balance for each taxpayer on an ongoing basis. GAO/AIMD-99-75, p.15, 16.

> We previously reported that IRS had significant problems locating supporting documentation for unpaid assessment transactions. GAO/AIMD-99-75, p.16.

34. GAO/AIMD-99-75's footnote 15 references GAO/AIMD 98-77, IRS FINANCIAL AUDIT, discussed below.

35. GAO/AIMD-99-75 continued:

> As we have previously reported,[24] IRS has significant and long-standing weaknesses in controls over its computer information systems.
> *****
> ...serious weaknesses continued to exist in the following six functional areas: (1) security program management, (2) access control, (3) application software development and change controls, (4) system software, (5) segregation of duties, and (6) service continuity. Continued weaknesses in these areas can allow unauthorized individuals access to critical hardware and software where they may intentionally or inadvertently add, alter, or delete sensitive data or programs. GAO/AIMD-99-75, p.23.

36. GAO/AIMD-99-75's footnote 24 identifies "IRS SYSTEMS SECURITY: TAX PROCESSING OPERATIONS AND DATA STILL AT RISK DUE TO SERIOUS WEAKNESSES (GAO/AIMD-97-49, April 8, 1997)" and GAO/AIMD-98-77, previously footnoted (n. 15) on page 15.

37. GAO/AIMD 98-77, IRS FINANCIAL AUDIT identified in GAO/AIMD-99-75's footnote 15 raised issues particularly material to the case at bar:

> This report...discusses significant matters that we considered in performing our audit and in forming our conclusions, including identified weaknesses in IRS' internal controls, noncompliance with laws and regulations and requirements of FFMIA, and other significant matters... Letter to Secretary of the Treasury, GAO/AIMD 98-77, p. 1.

38. GAO/AIMD 98-77 specified:

> Due to the severity of the material weaknesses in IRS' financial accounting and reporting controls, all of which were reported in IRS' fiscal year 1997 FIA report, extensive reliance on ad hoc programming and analysis was needed to develop financial statement line item balances, GAO/AIMD 98-77, p. 6.

As we previously reported,5 IRS' general ledger was not designed to support financial statement preparation.

*****

IRS does not have a detailed listing, or subsidiary ledger, which tracks and accumulates unpaid assessments6 on an ongoing basis. To compensate for the lack of a subsidiary ledger, IRS runs computer programs against its master files to identify and classify the universe of unpaid assessments. However, this approach required numerous audit adjustments... GAO/AIMD 98-77, p. 9.

In our audit of IRS' fiscal year 1996 Custodial Financial Statements,8 we reported that IRS could not locate sufficient supporting documentation to (1) enable us to evaluate the existence and classification of unpaid assessments... GAO/AIMD 98-77, p. 10.

IRS acknowledged the internal control weaknesses and noncompliance with laws and regulations we cited... GAO/AIMD 98-77, p. 24.

39. GAO/AIMD 98-77's footnote 6 (p. 9), cites GAO/AIMD-98-18 IRS FINANCIAL AUDIT,

which reported:

We are unable to give an opinion on the Statement of Financial Position because IRS could not provide adequate documentation to support its balance of federal taxes receivable. Consequently, we were unable to determine whether the amount reported for net federal tax receivables, which comprise over 95 percent of total custodial assets at September 30, 1996, was fairly stated.

*****

sufficient evidence supporting the classification of itemized tax collections and refunds was not available.

*****

the classification of itemized collections and refunds of federal taxes presented on the statement may not be reliable.

*****

The nature of these material weaknesses was such that they affected our ability to render an unqualified opinion on IRS' fiscal year 1996 financial statements taken as a whole.

*****

Material weaknesses in internal control and recordkeeping systems...precluded the tests necessary to provide a basis to report on compliance with pertinent laws and regulations. GAO/AIMD-98-18, pp. 6, 7.

As we have reported in the past[2] and as discussed in a later section of this report, IRS lacks an accounts receivable subsidiary ledger or other similar mechanism which routinely tracks receivables individually... GAO/AIMD-98-18, p. 7.

40. GAO/AIMD 98-18's footnote 2 cites FINANCIAL AUDIT: EXAMINATION OF IRS' FISCAL YEAR 1995 FINANCIAL STATEMENTS (GAO/AIMD-96-101, July 11, 1996); FINANCIAL AUDIT: EXAMINATION OF IRS' FISCAL YEAR 1994 FINANCIAL STATEMENTS (GAO/AIMD-95-141, August 4, 1995); FINANCIAL AUDIT: EXAMINATION OF IRS' FISCAL YEAR 1993 FINANCIAL STATEMENTS (GAO/AIMD-94-120, June 15, 1994); and FINANCIAL AUDIT: IRS SIGNIFICANTLY OVERSTATED ITS ACCOUNTS RECEIVABLE BALANCE (GAO/AFMD-93-42, May 6, 1993).

41. In its Letter "To the President of the Senate and the Speaker of the House of Representatives", GAO/AIMD-96-101 reports on the Principal Financial Statements of the Internal Revenue Service (IRS) for fiscal years 1995 and 1994, without the equivocation found in later reports:

    As in prior years, limitations on the scope of our audit and the problems that we
    found made it impossible to provide an affirmative opinion on:
    o The Principal Financial Statements for 1995. Thus, the accompanying statements
    may be unreliable.

    o Internal controls. Management did not assert that IRS controls were effective and
    we noted major weaknesses in recordkeeping and systems.

    o Compliance with laws and regulations. We were unable to test the laws we
    considered necessary; accordingly, we are unable to report on the Internal Revenue
    Service's compliance with laws and regulations. GAO/AIMD-96-101, p. 1.

42. GAO/AIMD-95-141, GAO/AIMD-94-120, and GAO/AFMD-93-42 are unavailable electronically, and, as all GAO Reports cited herein, are on Order from GAO.

43. GAO's Opinion(s) regarding the accuracy and reliability of IRS's computer records; IRS's lack of reliance on the computer records in the ordinary course of carrying on its activities; input accuracy; and, trustworthiness, show that the "records" to which Counsel attempts to

testify fail to meet any reasonable evidentiary standard of admissibility.

44. Each and every GAO Report excerpted herein brings up the same issues, in one form or another: (1) information security; (2) decreased reliability of the information; and (3) lack of supporting records.

45. At least one of the excerpted GAO Reports each reported: (4) master files do not contain all the details necessary; (5) lack of reasonable assurance that information reported by IRS is accurate; and, (6) major weaknesses in recordkeeping.

46. GAO found that "IRS must apply statistical sampling and projection techniques to data in its master files" and use a "complex and often manual financial reporting process ... highly vulnerable to human error."

### III. COUNSEL WELL AWARE THAT IRS COMPUTER RECORDS UNRELIABLE

47. To the extent that IRS uses human input to compensate for what are represented as machine processes, Counsel's employer knows that the computer print-out (transcript) represents the output of statements placed into the computer by out of court declarants, the transcript is presumably hearsay, and has published that knowledge:

> Computer-stored records that contain human statements must satisfy an exception to the hearsay rule if they are offered for the truth of the manner asserted. Before a court will admit the records, the court must establish that the statements contained in the record were made in circumstances that tend to ensure their trustworthiness. See, e.g., Jackson, 208 F.3d at 637

48. Counsel's employer propounds that:

> [C]ourts generally permit computer-stored records to be admitted as business records according to Fed. R. Evid. 803(6)... Some courts simply apply the direct language of Fed. R. Evid. 803(6), which appears in the beginning of this chapter. See e.g., United States v. Moore, 923 F.2d 910, 914 (1st Cir. 1991); United States v. Catabran, 836 F.2d 453, 457 (9th Cir. 1988) [cited by Plaintiff]. Other circuits have articulated doctrinal tests specifically for computer records that largely (but not exactly) track the requirements of Rule 803(6). See, e.g., United States v. Cestnik, 36 F.3d 904,

909-10 (10th Cir. 1994) ("Computer business records are admissible if (1) they are kept pursuant to a routine procedure designed to assure their accuracy, (2) they are created for motives that tend to assure accuracy (e.g., not including those prepared for litigation), and (3) they are not themselves mere accumulations of hearsay.") (quoting Capital Marine Supply v. M/V Roland Thomas II, 719 F.2d 104, 106 (5th Cir. 1983)); United States v. Briscoe, 896 F.2d 1476, 1494 (7th Cir. 1990) (computer-stored records are admissible business records if they "are kept in the course of regularly conducted business activity, and [that it] was the regular practice of that business activity to make records, as shown by the testimony of the custodian or other qualified witness.") (quoting United States v. Chappell, 698 F.2d 308, 311 (7th Cir. 1983)). Notably, the printout itself may be produced in anticipation of litigation without running afoul of the business records exception. The requirement that the record be kept "in the course of a regularly conducted business activity" refers to the underlying data, not the actual printout of that data. See United States v. Sanders, 749 F.2d 195, 198 (5th Cir. 1984).

49. The GAO has documented in more than a decade's worth of Reports, that IRS has no "routine procedure designed to assure the accuracy" of its computer records, nor are they "created for motives that tend to assure accuracy (e.g., not including those prepared for litigation)"; and cannot state with assurance that the computer records "are not themselves mere accumulations of hearsay". To the extent that Counsel's employer asserts that "the printout itself may be produced in anticipation of litigation without running afoul of the business records exception" if made "'in the course of a regularly conducted business activity'" refers to the underlying data, not the actual printout of that data; it is the underlying data which GAO has found unreliable.

50. Counsel's employer knows, and has published the knowledge that:

> Evidence that a computer program is sufficiently trustworthy so that its results qualify as business records according to Fed. R. Evid. 803(6) also establishes the authenticity of the record. Cf. United States v. Saputski, 496 F.2d 140, 142 (9th Cir. 1974).

51. By that standard, the computer transcript to which Counsel purports to testify fails authenticity by failing trustworthiness.

52. With respect to data purportedly not human-generated, Counsel's employer has written:

    With a machine…the possibility of inaccurate or misleading data only materializes if the machine is not functioning properly.

53. Plaintiff contends that the Government Accounting Office/Government Accountability Office has repeatedly established that IRS computer information is anything but "sufficiently trustworthy"; and that GAO has documented the untrustworthiness of IRS computer records due to unreliability, and major weaknesses in recordkeeping, among many failures. That "the machine is not functioning properly" is established by GAO's repeated findings of IRS' use of statistical sampling and manual financial reporting process.

54. Plaintiff further contends that Counsel's "declaration" regarding computer records known to be unreliable and untrustworthy constitutes a misrepresentation of fact and, potentially, an attempted fraud upon the Court. See: Motion for Sanctions and Referral to the Disciplinary Committee.

55. Counsel's employer has acknowledged that:

    The authentication requirement and the hearsay rule usually provide the most significant hurdles that prosecutors will encounter when seeking the admission of computer records. However, some agents and prosecutors have occasionally considered two additional issues: the application of the best evidence rule to computer records, and whether computer printouts are "summaries" that must comply with Fed. R. Evid. 1006.

56. Counsel's employer expounds:
    1. The Best Evidence Rule

    The best evidence rule states that to prove the content of a writing, recording, or photograph, the "original" writing, recording, or photograph is ordinarily required. See Fed. R. Evid. 1002. Agents and prosecutors occasionally express concern that a mere printout of a computer-stored electronic file may not be an "original" for the purpose of the best evidence rule. After all, the original file is merely a collection of 0's and 1's; in contrast, the printout is the result of manipulating the file through a complicated series of electronic and mechanical processes.

> Fortunately, the Federal Rules of Evidence have expressly addressed this concern. The Federal Rules state that
>
> [i]f data are stored in a computer or similar device, any printout or other output readable by sight, shown to reflect the data accurately, is an "original".

57. Counsel's employer continues:
    2. Computer Printouts as "Summaries"

> Federal Rule of Evidence 1006 permits parties to offer summaries of voluminous evidence in the form of "a chart, summary, or calculation" subject to certain restrictions. Agents and prosecutors occasionally ask whether a computer printout is necessarily a "summary" of evidence that must comply with Fed. R. Evid. 1006. In general, the answer is no. See Sanders, 749 F.2d at 199; Catabran, 836 F.2d at 456-57; United States v. Russo, 480 F.2d 1228, 1240-41 (6th Cir. 1973). Of course, if the computer printout is merely a summary of other admissible evidence, Rule 1006 will apply just as it does to other summaries of evidence. See United States v. Allen, 234 F.3d 1278, 2000 WL 1160830, at *1 (9th Cir. Aug. 11, 2000) (unpublished).
> Rule 1006. Summaries

58. To the extent that the computer transcript - to which Counsel purports to testify - attempts to summarize "other admissible evidence" the Court shall take judicial notice, pursuant to Rule 201, Fed.R.Ev., that Fed. R. Evid. 1002 - the best evidence rule - requires, for admissibility of a computer printout, that such printout "reflect the data accurately" in order to be deemed an "original".

59. The Court will take Judicial Notice pursuant to Rule 201, Fed R. Ev., of the inaccuracy, and unreliability, documented in the GAO Reports excerpted herein. GAO has repeatedly documented that the underlying data is untrustworthy, and the best evidence rule to make inadmissible evidence admissible, merely because the proponent would rather not produce the physical evidence in Court. The physical documents, such as an asserted Substitute for Return, and an asserted "23C" would be the best evidence, and the only evidence admissible under Fed. R. Evid. 1002.

## CONCLUSION

60. The computer records to which Counsel purports to testify have been found by the Government Accountability Office, a competent authority of the United States, to be based upon inaccurate, unreliable and untrustworthy data, and the relevant authorities establish their inadmissibility as hearsay incapable of qualifying under the business records exception.

WHEREFORE, Counsel's computer "evidence" should be stricken, and the Motion to Dismiss should be denied.

Dated *April 20*, 2006

*Sylvester Cain*
Sylvester Cain

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the forgoing and a copy of the amended complaint on defendant's attorney at his address of record.

Dated *April 20*, 2006

*Sylvester Cain*
Sylvester Cain