1           IN THE UNITED STATES DISTRICT COURT

2          FOR THE NORTHERN DISTRICT OF OKLAHOMA

3

4  UNITED STATES OF AMERICA,  )
                        )
5                      )
                        )
6           Plaintiff,  )
                        )
7  vs.                 )      CASE NO. 06-CR-62-TCK
                        )
8                     )
  RICHARD MAYNOR BLACKSTOCK,  )
9                      )
                        )
10          Defendant.  )

11

12

13            TRANSCRIPT OF PROCEEDINGS

14               JUNE 19, 2006
    BEFORE THE HONORABLE TERENCE KERN, DISTRICT JUDGE
15           JURY TRIAL - VOLUME I

16

17

18  APPEARANCES:

19

20  For the Plaintiff:        MS. LORETTA RADFORD
                        MR. KENNETH SNOKE
21                     U.S. Attorney's Office
                        110 W. 7th St., Ste 300
22                     Tulsa, Oklahoma 74119

23  For the Defendant:        MR. OSCAR STILLEY
                        Attorney at Law
24                     2120 North B Street
                        Ft. Smith, Arkansas 72901

25


EXHIBIT 2

2

```
 1                         INDEX

 2

 3  WITNESSES ON BEHALF OF THE PLAINTIFF           PAGE

 4

 5

 6  ROBERT DEAN

 7       Direct Examination by Mr. Snoke              3

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

<u>PROCEEDINGS</u>

\* \* \* \* \* \* \*

June 19, 2006:

    (Voir dire and opening statements were had but not designated as part of this record.)

        THE COURT:  Government may call its first witness.

        MR. SNOKE:  Government would first call Bob Dean.

    Your Honor, I have copies here in books.  Do you want me to put these in front of him?

        THE COURT:  You may.

    (Witness sworn.)

<u>BOB DEAN</u>,

Called as a witness on behalf of the plaintiff, being first duly sworn, testified as follows:

<u>DIRECT EXAMINATION</u>

BY MR. SNOKE:

Q.    Would you state your name and spell your last name for the court reporter please, sir.

A.    Bob Dean, D-E-A-N.

Q.    What's your business or occupation, Mr. Dean?

A.    I'm custodian of records for the Internal Revenue Service.

Q.    And what do you do in that capacity?

A.    I assist with preparing documents for trial, research, and testifying to those documents in trial and about processes at the processing center.

1  Q.  And where is the processing center?

2  A.  I work in Austin, Texas.

3  Q.  Does Austin, Texas have a system whereby you can retrieve

4  documents with their file no matter where they're filed?

5  A.  Yes, that's correct.

6  Q.  That would include documents that would have been filed

7  both in the Northern District of Oklahoma throughout Oklahoma

8  and maybe even in states such as Georgia or Texas?

9  A.  Yes.  Our system, I get access to any records that are

10  filed anywhere in the United States.

11  Q.  How long have you worked for the IRS, sir?

12  A.  Twenty-one years.

13  Q.  And have you worked in any other capacities there with the

14  IRS in that 21 years?

15  A.  Yes.  I've worked in processing.  I've worked in business

16  center reporter programs and a manager of different groups.

17  Q.  Before you there, I have placed several notebooks.  If

18  you'll start on your left there, I believe with the first

19  notebook that contains a number of exhibits beginning with

20  Exhibit No. 1.  Can you take a look at that, please.  And if

21  you will tell me -- first of all, can you tell us generally

22  what that is?

23  A.  This is a Form 1040X that was submitted for tax year 1998

24  for Michael Polay and Wendy Weisberg.

25  Q.  Is this a true and correct copy of that tax form that was

1    received by the IRS?

2    A.    Yes, it is.

3    Q.    And it came from the files and records that you have just

4    discussed there in your records center in Austin, Texas?

5    A.    Yes.  They came from IRS records.

6    Q.    Does it contain all the attachments that came with that?

7    Looks like even the last page there is an envelope with --

8    A.    Yes.

9    Q.    -- sort of a postage mark.

10   A.    Right.  It has copies of everything.

11   Q.    All right.

12              MR. SNOKE:  We would move into evidence Government's

13   Exhibit 1 at this time.

14              MR. STILLEY:  No objection.

15              THE COURT:  Be admitted.

16   Q.    (By Mr. Snoke)  What does it show on Government's Exhibit

17   1 as the date of -- the first date of receipt on that exhibit?

18   A.    The first date of receipt was September 24 of 2002.

19   Q.    Going back -- that's a 1040X form?

20   A.    That's correct.

21   Q.    If you'll go to page 3 of that -- actually, it's the first

22   page of Schedule A., appears to be line 27.  We're now on --

23   I'm showing on the screen -- do you have your screen on in

24   front of you?

25   A.    Yes, I do.

1  Q.   On line 27 there, can you read line 27 there for us.  Read

2  the question and the answer and the amount shown.

3  A.   Line 27 is for other miscellaneous deductions, and it

4  shows, "A deduction and claim of right founded on U.S.C. 26,

5  1341, compensation for personal labor," and it shows an amount

6  of $108,755.

7  Q.   All right.  Now, turning back to the first page of Exhibit

8  1, sir, if you will tell me, is there a preparer's signature on

9  that first page there?

10  A.   No, there's not.

11  Q.   Let's go to Exhibit 1-A.  Tell the Court and the jurors

12  what Exhibit 1-A is.

13  A.   1-A is a certified transcript of an account for Michael

14  Polay for tax year 1998.

15  Q.   That's the same year we just identified Exhibit 1 as being

16  filed for that year, 1998 tax year?

17  A.   Yes, that's correct.

18  Q.   Okay.  And is that a record maintained there in the Austin

19  service center as a true and correct record of what you've got?

20  A.   Yes.  This is information from the computer system, like a

21  transcript of an account, similar to a statement you would get

22  from your bank or your credit card company.

23          MR. SNOKE:  We move into evidence at this time

24  Exhibit 1-A.

25          MR. STILLEY:  No objection.

1          THE COURT:  Be admitted.

2    Q.   (By Mr. Snoke)  If you would next look at Exhibit 2.   Tell

3    us with respect to Exhibit 2 what that is, sir.

4    A.   This is a 1040X.  It's an amended individual income tax

5    return for Michael Polay and Wendy Weisberg for tax year 1999.

6    Q.   This is the next year then?

7    A.   That's correct.

8    Q.   Again, it's a 1040X.  Would you tell the jurors what a

9    1040X form is.

10   A.   A 1040X is used --

11   Q.   Wait.  Let me get this in evidence first.  And it's a true

12   and correct copy, right?

13   A.   That's correct.

14          MR. SNOKE:  We move in evidence Exhibit 2.

15          MR. STILLEY:  No objection.

16          THE COURT:  Be admitted.

17   Q.   (By Mr. Snoke)  Now you can tell the jurors.  What is a

18   1040X?

19   A.   1040X is what a taxpayer would use to change the

20   information that was originally filed on a Form 1040 if there

21   is some information that came in later, such as other income or

22   other deductions that they might report that would change the

23   amount of tax owed or not owed.

24   Q.   All right.  Can you tell us before we leave the first page

25   of that exhibit, did anybody sign as a preparer down there,

1  Mr. Blackstock or anybody else, as a preparer on this document?

2  A.  No.  There's no paid preparer signature.

3  Q.  Then going back to the first page of the Schedule A there

4  again in line 27, would you tell us, does that have -- again,

5  read the question and the answer and the amount claimed for the

6  deduction on that form.

7  A.  Okay.  That's for other miscellaneous deductions, and it

8  states, "A deduction and claim of right founded under Title 26,

9  1341, compensation for personal labor," and it was for $95,135.

10  Q.  So, in essence, in this tax return with that notation

11  there on line 27 of the Schedule A, what are the taxpayers

12  asking to -- what are the taxpayers asking for there, if you

13  can tell?

14  A.  What they're doing is they're reporting income on line 1

15  of the 1040X and then they're removing it as itemized

16  deductions, so then, in effect, their taxable income would be

17  zero.

18  Q.  Now would you look at Exhibit 2-A for me, please.  Tell me

19  what that is.

20  A.  2-A is the certified transcript of the account for Michael

21  Polay for the tax year 1999.

22  Q.  That's the same year in which we just got that report in

23  Exhibit 2?

24  A.  That's correct.

25       MR. SNOKE:  We move into evidence Exhibit 2-A at this

1  time.

2           MR. STILLEY:  No objection.

3           THE COURT:  Be admitted.

4  Q.   (By Mr. Snoke)  Next, if you would look at -- I didn't ask

5  you the filing date on that one.  Let's go back to Exhibit 2

6  and tell me what the filing date is on Exhibit 2.

7  A.   This shows a received date of December 11, 2002.

8  Q.   But it's for the '99 tax year; is that correct?

9  A.   Correct.

10 Q.   Is there some provision in the Internal Revenue Code

11 regarding the number of years you can go back and file amended

12 returns for --

13 A.   Generally --

14 Q.   -- if you know?

15 A.   Generally it's up to three years after a return was filed,

16 but it depends upon other information on there, but that's the

17 general rule.

18 Q.   So we've identified a filing in September '02 in Exhibit 1

19 for the '98 year and in December of '02 for the 99 tax years so

20 far, right --

21 A.   That's correct.

22 Q.   -- for Mr. Polay.  Let's go to Exhibit 3, please.  Tell

23 the Court and the jury what that is, sir.

24 A.   This is a Form 1040X amended income tax return for tax

25 year 2000 for Michael Polay and Wendy Weisberg.

1          MR. SNOKE:  May I have a minute, Your Honor?

2          THE COURT:  You may.

3    Q.   (By Mr. Snoke)  This is a true copy of the records that

4    you have down there, true and accurate copy of it?

5    A.   That's correct.

6    Q.   As filed?

7    A.   Yes, it is.

8    Q.   Then the filing date on Exhibit 3?

9    A.   It shows December 11, 2002.

10   Q.   And again, is this one signed in any way by any tax

11   preparer?

12   A.   No, it's not.

13   Q.   Again, going to the first page of Schedule A of that

14   exhibit.  Wait a minute.

15         MR. SNOKE:  Let's move that into evidence -- Exhibit

16   3 into evidence at this time.

17         MR. STILLEY:  No objection.

18         THE COURT:  Be admitted.

19   Q.   (By Mr. Snoke)  And before we go on to 3-A, let's go back

20   for a moment to 1-A and look at that for a moment.  And tell me

21   if it -- Exhibit 1-A you testified, I believe, was the

22   transcript of the 1040X or at least for Mr. Polay for the

23   '98 -- 1998 tax year; is that correct?

24   A.   Yes.

25   Q.   And we've had a -- this 1040X Exhibit 1 filed on 9/14/02,

1  does that show on the transcript there?

2  A.    Yes.  It's the third entry down where it shows "amended

3  return filed."

4  Q.    And does it show that that claim was disallowed?

5  A.    Yes.  About three months later, a letter was sent to

6  Mr. Polay saying that the 1040X was not allowed.

7  Q.    That date on there is 12/30/02?

8  A.    That's correct, yes.

9  Q.    Let's do the same thing with respect to the '99 tax year

10  in Exhibit 2-A, please, Exhibit 2-A.  You testified that

11  Exhibit 2, the 1040X for '99 -- 1999 for Mr. Polay was filed

12  December 11 of '02 as shown on the tax -- on the filing stamp.

13  And does that show that that was -- 12/11/02, I'm sorry.  Does

14  that show on the -- you may have a hole in your copy, but if

15  you look on the screen there --

16  A.    Right.  There was the amended return filed on 12/11/02.

17  Q.    All right.  Let's see, above it for some reason, I

18  guess we have a --

19  A.    There was a previous one that had been filed in September

20  of '02, and that was disallowed.

21  Q.    All right.  Then we have -- all right.  Let's go to

22  Exhibit 3-A then.  We just did 3.  And tell me what Exhibit 3-A

23  is.

24  A.    This is the certified transcript for Michael Polay for tax

25  year 2000.

1  Q.    And that, again, came from the records down in Austin

2  there, the IRS?

3  A.    Yes, it did.

4  Q.    And for the year 2000, have we established when that -- we

5  did establish when that was filed.  So let's move on to --

6          MR. SNOKE:  Let's move that into evidence, Exhibit

7  3-A.

8          MR. STILLEY:  No objection.

9          THE COURT:  Be admitted.

10 Q.    (By Mr. Snoke)  All right then.  Exhibit 4 -- before we

11 leave 3-A, can we tell whether -- can we tell whether that

12 claim in Exhibit 3 was paid or whether it was disallowed?

13 A.    Well, there was one that came in prior 9/24, just like in

14 the other one, and that was disallowed in February of '03.  And

15 then the one came in in the meantime in December of '02, but

16 that -- there was ultimately an assessment by examination of

17 tax.

18 Q.    All right.  Let's go to Exhibit 4.  Tell us the same thing

19 with respect to Exhibit 4, will you, please, sir.  What is it?

20 This is a 1040 form, isn't it?

21 A.    This is a Form 1040 for 2001 tax year for Michael Polay.

22 Q.    All right.  What would be the circumstances of filing a

23 1040 or -- versus a 1040X?

24 A.    Generally, a 1040 needs to be filed before the 1040X,

25 because you have to have the original return before you change

1   anything.

2   Q.   Can a 1040X be filed if the IRS has done a substitute for

3   return for the taxpayer?

4   A.   Yes, because there is information sent to the taxpayer

5   saying these are what the IRS proposes to be your income and

6   tax due, and then the taxpayer can come back and say, well, no,

7   these are the changes that I want to make to your proposal.

8   Q.   So the IRS will accept a 1040X on a taxpayer who didn't

9   file a 1040 but for whom they have done a substitute return?

10  A.   Yes, that's correct.

11  Q.   Again, this is from Mr. Polay for the year 2001?

12  A.   Yes, that's true.

13           MR. SNOKE:   We would move into evidence Government's

14  Exhibit 4 at this time.

15           MR. STILLEY:   No objection.

16           THE COURT:   Be admitted.

17  Q.   (By Mr. Snoke)   Can you tell us what the -- I think I

18  skipped this on some of the interim ones, but the date of

19  filing on this, the earliest date of filing?

20  A.   This shows to be received December 12th of 2002.

21  Q.   And going to the Schedule A -- or may be in a different

22  place on this 1040 -- no, it's still in Schedule A, line 27.

23  Does this have the same language as the previous two that you

24  talked about -- previous three, I guess?

25  A.   Right.   It talks about a claim of right deduction, and it

1  shows $107,514.

2  Q.  All right.  Look at 4-A, then, please, for me.  Tell me

3  what that is.

4  A.  This is the certified transcript for Michael Polay for tax

5  year 2001.

6  Q.  All right.  Again, is that document an accurate copy of

7  what the records show for the IRS?

8  A.  Yes.

9        MR. SNOKE:  We move into evidence 4-A at this time.

10       MR. STILLEY:  No objection.

11       THE COURT:  Be admitted.

12  Q.  (By Mr. Snoke)  Let's go to 5 then.  Again, the same

13  questions with respect to 5.  It's still Mr. Polay?

14  A.  Yes.

15  Q.  What tax year is this for?

16  A.  This is Form 1040 for 1997 for Michael Polay.

17  Q.  All right.  Again, a true and accurate copy of the

18  records?

19  A.  Yes, that's true.

20  Q.  Including -- I think the last page there is actually an

21  envelope.  Do they usually keep the envelopes that the taxpayer

22  mails in its tax returns?

23  A.  Only if it's received after April 15.

24  Q.  All right.  Well -- okay.  Then this one was, I guess?

25  A.  This was a late-filed return, it appears, because it was

1  received late -- or after 1998.

2          MR. SNOKE:  We'll move into evidence Exhibit 5 at

3  this time.

4          MR. STILLEY:  No objection.

5          THE COURT:  Be admitted.

6  Q.   (By Mr. Snoke)  Tell us with respect to Exhibit 5 when it

7  was received by the IRS.

8  A.   It appears to have a earliest date of February 13, 2003.

9  Q.   Going to the third page there, the first page of the

10 Schedule A, again the same language there on line 27 typed in

11 by the taxpayer or his representative.

12 A.   It shows the claim of right deduction of $63,722.

13 Q.   That pretty much -- actually, go back to the first page of

14 that tax return on Exhibit 5.  Is that the total amount of

15 income there for that year?

16 A.   Yes, that's the total amount of income.

17 Q.   So he's listed it as wages and salaries there on line 7,

18 and it comes down there to line 32; his adjusted gross income

19 is still 63,722; is that correct?

20 A.   Correct.

21 Q.   Over there on Schedule A, he's taking it all back off by

22 claiming it as a deduction; is that correct?

23 A.   Right.  By removing it, then he shows zero for taxable

24 income.

25          MR. SNOKE:  We move into evidence 5-A.

1      MR. STILLEY:  No objection.

2      THE COURT:  Be admitted.

3  Q.  (By Mr. Snoke)  All right.  Now, 5-A is the transcript; is

4  that correct?

5  A.   Yes.

6  Q.   For the same year, 1997, for Mr. Polay?

7  A.   This is the transcript for '97.

8  Q.   It goes with Exhibit 5, which was the 1040 tax return,

9  correct, same year, 1997?

10 A.   Yes.

11 Q.   Let's go to Exhibit 6.  Is that a 1040X again from your

12 records at the IRS?

13 A.   Yes, it is.  It's a 1040X for tax year 1999 for Bradley

14 and Bonnie White.

15 Q.   For the tax year 1999; is that correct?

16 A.   Yes.

17 Q.   All right.

18      MR. SNOKE:  Again, we would move into evidence

19 Exhibit 6.

20      MR. STILLEY:  No objection.

21      THE COURT:  Be admitted.

22 Q.  (By Mr. Snoke)  Again, as you've done before, would you

23 tell us, first of all, is there anybody's name down there on

24 preparer's line?

25 A.   No, there's not.

1  Q.   Mr. Blackstock's name doesn't appear anywhere on that

2  document?

3  A.   No.

4  Q.   At least on the front page?

5  A.   No.

6  Q.   If you want to look back through there, I think -- I don't

7  think you'll find his name anywhere.  But there are some things

8  attached to that, of course, to that tax return; is that

9  correct?

10  A.   There are, but I don't see Mr. Blackstock's signature.

11  Q.   All right.  What was the earliest filing date on that

12  document when it was filed?

13  A.   It shows a received date of December 2 of 2002.

14  Q.   And the -- going to the first page of Schedule A, what is

15  the amount of deduction?

16  A.   The claim of right deduction, is for $77,201.

17  Q.   All right.  There's some other deductions on this

18  particular tax return; is that correct?

19  A.   Yes.  Some state and local income taxes, property taxes

20  and mortgage interest.

21  Q.   Let's go to Exhibit 6-A.  Is that the matching transcript

22  for this taxpayer for that tax year, which was 1999?

23  A.   Yes, it is.

24          MR. SNOKE:  Move into evidence 6-A.

25          MR. STILLEY:  No objection.

1      THE COURT:  Be admitted.

2  Q.   (By Mr. Snoke)  Go to 7 next, Exhibit 7.  Again, we have a

3  1040X form for the year 2000, do we?

4  A.   Yes, there is.

5  Q.   Again for Bradley and Bonnie White?

6  A.   That's correct.

7  Q.   And again, it's your records -- taken from your records

8  there at the IRS?

9  A.   Yes, it is.

10      MR. SNOKE:  Move into evidence 7.

11      MR. STILLEY:  No objection.

12      THE COURT:  Be admitted.

13  Q.   (By Mr. Snoke)  Filing date on -- earliest filing date on

14  Exhibit 7, was it 12/7/02?

15  A.   That's correct.

16  Q.   Again, any indication Mr. Blackstock was involved in this,

17  preparing this tax return?

18  A.   No, I didn't see a signature.

19  Q.   He's not down there as a preparer?

20  A.   No.

21  Q.   Going to the Schedule A, what is the amount -- the claim

22  of right compensation for personal labor they're deducting on

23  the first page of Schedule A?

24  A.   The deduction is for $80,678.

25  Q.   7-A.  Again, transcript that goes with this?

1  A.   Yes, that's correct.

2  Q.   For that year ——

3  A.   For 2000.

4  Q.   —— 2000 year?

5          MR. SNOKE:  Move into evidence 7-A.

6          MR. STILLEY:  No objection.

7          THE COURT:  Be admitted.

8  Q.   (By Mr. Snoke)  I skipped one here.  We have to go back

9  for one year.  6-D.  If you'll look at 6-D briefly, which is

10 for the 1999 tax year.

11 A.   Okay.

12 Q.   Can you tell me what that is, sir?

13 A.   This is a copy of a letter that was mailed from the

14 Internal Revenue Service to Bradley and Bonnie White concerning

15 tax years 1999 and 2000.

16 Q.   That's an accurate copy of the IRS copy of that letter?

17 A.   Yes, it is.

18          MR. SNOKE:  Move into evidence 6-D at this time.

19          MR. STILLEY:  No objection.

20          THE COURT:  Be admitted.

21 Q.   (By Mr. Snoke)  Please tell the jury a little bit about

22 this letter that's up there on the screen there.  And I realize

23 it's a little hard to see maybe.  It's standard typing.  But

24 tell us what that letter is, please, sir.

25 A.   This letter is in response to the documents that Bradley

1    and Bonnie White had submitted to the Internal Revenue Service,

2    and it was a letter stating that they have determined the

3    documents that they sent in is a frivolous document, no basis

4    in law, and represents a frivolous position.

5        Then it goes on down further that there could be a $500

6    penalty for each frivolous return or document filed.  And then

7    it gives other instructions that if they sign certain forms,

8    they'll -- the IRS will disregard the previous documents filed

9    and not assess the frivolous return penalties.

10   Q.    If they file a properly signed 2297 and 3363.  What are

11   those forms?

12   A.    Those are forms filed that the person -- that the person

13   who submitted these can say that they revoke what they sent in.

14   Q.    What was the date of this letter sent out by the IRS?

15   A.    This was sent out March 18th of 2003.

16   Q.    Going back to exhibit -- this has to do with the '99 and

17   2000 tax years; does it not?

18   A.    That's correct.

19   Q.    Shows on the upper right-hand side of that.  And Exhibit 6

20   had to do with the '99 tax year and I guess Exhibit 7 had to do

21   with the 2000 tax year we just identified and moved into

22   evidence; is that correct?

23   A.    That's correct.

24   Q.    They're telling them both with respect to both Exhibit 6

25   and Exhibit 7 that they are rejecting those as frivolous?

1    A.    That's correct.

2    Q.    We showed that the filing date on Exhibit 6 was 12/02/02

3    and the one on 7 was 12/07/02, and this letter is dated in

4    March of '03; is that correct?

5    A.    That's correct.

6    Q.    All right.  Let's go on then back into the 7s again, and

7    we did 7 and 7-A.  Let's go to Exhibit 7-B.

8              MR. SNOKE:  Did I move in 6-D in evidence?

9              THE CLERK:  You did.

10   Q.    (By Mr. Snoke)  All right.  7-B is the next one I have

11   down here.  And that may be a similar document to the one we

12   just discussed.

13   A.    7-B is the same as 6-D, but because it's for the next tax

14   year for 2000, there were two different copies made.

15   Q.    It goes with Exhibit 7.  And we had the other one with

16   Exhibit 6; is that right?

17   A.    Correct.

18   Q.    But the same letter covered both tax years that we pointed

19   out there when we had it on the screen.

20   A.    Right.

21             MR. SNOKE:  Move into evidence 7-B.

22             MR. STILLEY:  No objection.

23             THE COURT:  Be admitted.

24   Q.    (By Mr. Snoke)  Let's look at 7-C.  Tell us what 7-C is.

25   A.    7-C is a print of an electronically filed return for

1    Bradley and Bonnie White for tax year 2000.

2    Q.    That's the same year we've been talking about here in

3    Exhibit 7, elsewhere in Exhibit 7?

4    A.    Correct.

5    Q.    And what is this they're -- this is a Form 1040

6    electronically filed; is that right?

7    A.    That is correct.

8    Q.    It's a correct copy from the records of the IRS?

9    A.    Yes.

10            MR. SNOKE:  Move into evidence 7-C.

11            MR. STILLEY:  No objection.

12            THE COURT:  Be admitted.

13   Q.    (By Mr. Snoke)  Now, on 7-C is actually the original --

14   well, tell us what the filing date is on 7-C.

15   A.    7-C was received around -- well, it was received around

16   February 12th of 2001.

17   Q.    And can we look at the transcript and tell when that was

18   -- which is 7-A?

19   A.    Yes.  That's why I had to look at the right-hand side

20   because this was the timely filed tax return for tax year 2000.

21   Q.    So it was on or before April 15th of 2001, then, or

22   something?

23   A.    Right.

24   Q.    So this is the original tax filing for the year 2000, and

25   then Exhibit 7 is the amended one that they did under the --

1  under the claim that compensation for labor was not -- was

2  deductible; is that correct?

3  A.   That's right.

4  Q.   Let's look at Exhibit 8.   What is Exhibit 8?

5  A.   This is a true copy of Form 1040X for Tracy Whyburn for

6  tax year 2001.

7  Q.   Again, true and correct copy from the IRS files?

8  A.   Yes.

9        MR. SNOKE:  Move into evidence 8 at this time.

10       MR. STILLEY:  No objection.

11       THE COURT:  Be admitted.

12  Q.   (By Mr. Snoke)  As we did with the others,

13  Mr. Blackstock's name is not down there as a preparer.   In

14  fact, there's no name as a preparer, right?

15  A.   No, there's no name.

16  Q.   And the received date for this 2001 tax return for

17  Mr. Whyburn?

18  A.   December 4th of 2002.

19  Q.   Turning to the line 27 of Schedule A, what is the

20  compensation for personal labor deduction that is on there?

21  A.   Claim of right deduction, is for $36,378.

22  Q.   All right.  It also says compensation for personal labor,

23  doesn't it?

24  A.   For personal labor, yes.

25  Q.   All right.  Going back to the first page of that document,

1    that doesn't -- the adjusted gross income is what -- was

2    originally what, as listed on the 1040X form?

3    A.    Originally adjusted gross income was shown as $38,941.

4    Q.    So this isn't the total amount, but it does take a lot

5    of --

6    A.    Well, whenever they add in all the other deductions that

7    they had, it would total up to $54,000.

8    Q.    That means that he is claiming a refund, actually?

9    A.    That's correct, yes.

10   Q.    Exhibit 8-A, again, is that the transcript for this tax

11   year for this taxpayer --

12   A.    Yes, it is.

13   Q.    -- Mr. Whyburn?

14           MR. SNOKE:  Move into evidence 8-A.

15           MR. STILLEY:  No objection.

16           THE COURT:  Be admitted.

17   Q.    (By Mr. Snoke)  8-B.  Look at 8-B for a minute.  What is

18   8-B?

19   A.    8-B is another copy of the letter from the Internal

20   Revenue Service to Tracy Whyburn.

21   Q.    Is that the same kind of letter that we talked about

22   before that went to -- the same letter that was identified as

23   going to earlier taxpayers?

24   A.    Yes.

25           MR. SNOKE:  We'd move into evidence 8-B.

1         MR. STILLEY:  No objection.

2         THE COURT:  Be admitted.

3  Q.  (By Mr. Snoke)  All right.  Again, if we can look at 8-B

4  for a minute.  We established that the tax return, the 1040X

5  for the year 2001, was filed in December of '02 by Mr. Whyburn?

6  A.   Correct.

7  Q.   And we established the amount that he was claiming.  And

8  what's the date of this letter?

9  A.   This was dated June 20th of 2003.

10  Q.   And does that -- going to Exhibit 8-A, does any of that

11  filing -- or show up on -- it shows the amended return filed on

12  12/04/02, right?

13  A.   That's correct.

14  Q.   Doesn't show the -- the letter wouldn't show there

15  normally -- the letter going out wouldn't show it?

16  A.   No, it would not.

17  Q.   All right.  And again, that's for the 2001 tax year for

18  Mr. Tracy Whyburn.  Let's move on to Exhibit 8-C.  Tell us what

19  this document is.

20  A.   This is a return print for tax year 2001 for a Form 1040

21  for Tracy Whyburn.

22  Q.   This is originally the 2001 return he filed?

23  A.   Yes.  That was what was originally filed in 2002.

24  Q.   And it was -- we established that he's trying to get back

25  36,378 with the 1040X return.  Does that amount show up

1    somewhere on this tax return, which is the one he originally

2    filed?

3    A.    Yes.  On line 7.

4    Q.    As wages, salaries, tips, etcetera?

5    A.    Yes.

6    Q.    And what is his total adjusted gross income for that year?

7    A.    Total was 38,941.

8    Q.    We discussed those numbers back when we were looking at

9    the 1040X.  Was that electronically filed?

10    A.    Yes.

11    Q.    Timely filed?

12    A.    Yes.

13    Q.    It doesn't have a stamp on it because it was timely filed;

14    is that correct?

15    A.    There wouldn't be a stamp on an electronic return.

16    Q.    We know it was -- for the 2001 year, it must have been

17    filed before April 15, 2002?

18    A.    Electronic returns are generally accepted by the IRS up

19    through October 31st of that year.

20    Q.    So we can't tell exactly when that was filed?

21    A.    From the transcript, it was received around August 5th of

22    2002, because there had been an extension filed.

23    Q.    All right.  About four months before the 1040X was

24    filed --

25    A.    Yes.

1  Q.   --- in December.

2           MR. SNOKE:  We move 8-C into evidence.

3           MR. STILLEY:  No objection.

4           THE COURT:  Be admitted.

5  Q.   (By Mr. Snoke)  Again 9, another 1040X form for

6  Mr. Whyburn for the 2000 tax year?

7  A.   Yes, it is.

8  Q.   Same questions.  It's the official record?

9  A.   Yes.

10          MR. SNOKE:  Move into evidence 9.

11          MR. STILLEY:  No objection.

12          THE COURT:  Be admitted.

13 Q.   (By Mr. Snoke)  Again, no preparer's name on this

14 document?

15 A.   No, there's not.

16 Q.   What's the filing date on this?

17 A.   It was received January 6th of 2003.

18 Q.   And the amount of claim of right compensation for personal

19 labor on line 27 that he wants deducted?

20 A.   That was for a deduction of $33,047.

21 Q.   Exhibit 9-A.  It's a transcript for this tax year for this

22 taxpayer?

23 A.   Yes, it is.

24          MR. SNOKE:  Move into evidence 9-A.

25          MR. STILLEY:  No objection.

1          THE COURT:  Be admitted.

2  Q.    (By Mr. Snoke)  Let's go to 9-B.  Another one of these

3  letters to Mr. Whyburn regarding this tax year, the 2000 tax

4  year?

5  A.    Yes, it is.

6  Q.    Same -- about the same language as we published here

7  before?

8  A.    That's correct, yes.

9          MR. SNOKE:  Move into evidence 9-B.

10         MR. STILLEY:  No objection.

11         THE COURT:  Be admitted.

12  Q.   (By Mr. Snoke)  What's the date that that letter went out

13  to Mr. Whyburn regarding his January 1040X form that we just

14  talked about in Exhibit 9?

15  A.    November 21st of 2003.

16  Q.    It took them almost a whole year before they actually

17  rejected this one; is that correct?

18  A.    It depends upon how busy they are.

19  Q.    I see.  Now, look at 9-C.  What is 9-C?

20  A.    This is the original 1040 return for Tracy Whyburn for

21  2000.

22  Q.    Electronically filed, as the other one?

23  A.    Yes.

24  Q.    Timely filed?

25  A.    Yes, it was.

```
 1              MR. SNOKE:  Move into evidence 9-C.

 2              MR. STILLEY:  No objection.

 3              THE COURT:  Be admitted.

 4   Q.   (By Mr. Snoke)  Let's go to 10.  What is 10?

 5   A.   Ten is a 1040X for 2001 tax year for Timothy and Linda

 6   Ophoff.

 7   Q.   That's O-P-H-O-F-F?

 8   A.   That's correct.

 9   Q.   Again, from your records there?

10   A.   Yes, it is.

11   Q.   Including all the attachments that were sent with this

12   filing, correct?

13   A.   Correct.

14              MR. SNOKE:  Move into evidence 10.

15              MR. STILLEY:  No objection.

16              THE COURT:  Be admitted.

17   Q.   (By Mr. Snoke)  Filing date on 10?

18   A.   Shows received February 2nd of '03.

19   Q.   Page 3, the amount of income that's being deducted as

20   claim of right deduction is how much, line 27 of Schedule A?

21   A.   $90,031.

22   Q.   No tax preparer's name on that one either?

23   A.   No, there's not.

24   Q.   Exhibit 10-A, is that the transcript for this tax year for

25   these taxpayers?
```

1  A.    Yes, it is.

2            MR. SNOKE:  Move in evidence 10-A.

3            MR. STILLEY:  No objection.

4            THE COURT:  Be admitted.

5  Q.    (By Mr. Snoke)  Let's go to 10-C.  And tell us what that

6  is.

7  A.    This is another one of those letters concerning frivolous

8  documents for Timothy and Linda Ophoff for 2001 tax year.

9  Q.    This one -- what's the date on this one?  Did this one go

10  out from the Internal Revenue Service?

11  A.    May 23rd of 2003.

12            MR. SNOKE:  Move into evidence at this time Exhibit

13  10-C.

14            MR. STILLEY:  No objection.

15            THE COURT:  Be admitted.

16  Q.    (By Mr. Snoke)  That's for the 2001 tax year; is that

17  right?

18  A.    That's correct.

19  Q.    This one has -- some of the others may have also, but this

20  one has another received date stamp down near the bottom of it;

21  is that correct?

22  A.    Yes.  There was a received date stamp that it was received

23  in Ogden in June 26th of '03.

24  Q.    It was received back -- it went out May 23rd, comes back

25  on June 26th of 2003; is that correct?

1  A.    Yes, that's correct.

2  Q.    Do you know -- well, let's look at -- incidentally, on

3  these dates that are up there, can you explain to the Court and

4  the jury the date of May 23 on the top of this letter, 10-C,

5  May 23, 2003, what does that mean -- when is it going to be

6  mailed out by the IRS?

7  A.    It's mailed out by at least May 23, generally a day or two

8  in advance, hopefully so that the person would receive it on

9  the date of the letter.

10 Q.    This would have gone out from -- this one would have gone

11 out from Ogden, Utah; is that right?

12 A.    Yes.

13 Q.    Which is the return address on it.

14       Let's look at Exhibit 10-D, then, for a moment.  Again,

15 these have similar received Ogden, Utah stamps on them, on

16 these documents.  Can you tell us what they are.  There's also

17 a 1040X, another copy of that.

18 A.    Yes, this showed received in Ogden on June 26th of 2003.

19 Q.    Is that a document that's from the records of the IRS

20 there in -- that you are certifying here today?

21 A.    Yes.

22 Q.    So that was received by Ogden and all the documents

23 attached -- I think you'll find they all have the same June 26,

24 2003 received stamp in Ogden; is that right?

25 A.    Yes.    They apparently stamped every page.

1          MR. SNOKE:  We move into evidence Exhibit 10-D at

2     this time.

3          MR. STILLEY:  No objection.

4          THE COURT:  Be admitted.

5     Q.   (By Mr. Snoke)  Now, that date is the same -- June 26,

6     2003 is the -- which you said was on -- appears on Exhibit 10

7     -- I'm sorry, 10-D is the same date that appeared on 10-C --

8     A.   Yes.

9     Q.   -- the letter with the frivolous filing notification

10    letter, right?

11    A.   It would appear that the Ophoffs sent the whole thing back

12    with a copy of the letter that we sent out with this additional

13    information back to the frivolous filer program.

14    Q.   That did not then comport with the -- with withdrawing

15    their -- with withdrawing their previously filed 1040X and

16    filing of Form 2297 or 3363?

17    A.   Correct.  Those forms weren't attached.

18    Q.   So they -- instead of doing that, they sent back this

19    package that you've identified, Exhibit 10-D; is that correct?

20    A.   Yes.

21    Q.   Then 10-D starts off with a letter to the Internal Revenue

22    Service in Ogden, says "Formal Protest of 1040X for 2001"; is

23    that right?

24    A.   Correct.

25    Q.   Kind of a typed letter there?

A.    Yes.

Q.    Signed by -- apparently signed by the Ophoffs?

A.    Yes, it is.

Q.    Without going through every page of that, let's go to --
next to Exhibit 10-E.  Tell us what that is.

A.    This is the tax return for Timothy and Linda Ophoff for
2001.

Q.    This is the next year, I guess.  The other one was for --
Exhibit 10 was for the year 2000?

A.    I'm --

Q.    I beg your pardon.  This is the same tax year 2001, but I
guess this is the original filing by them?

A.    This is what they originally sent in.

Q.    1040 --

        MR. SNOKE:  We move into evidence 10-E.

        MR. STILLEY:  No objection.

        THE COURT:  Be admitted.

Q.    (By Mr. Snoke)  All right.  Again, now, this being a 1040,
this actually has the signatures on the second page of it, does
it not?

A.    Yes, it does.

Q.    About when -- well, we can't tell.  The first page,
there's no stamp, so that means it was probably timely filed;
is that correct?

A.    No.  There's a stamp that it was received August 19th of

1    2002.

2    Q.    Okay.  Yeah, I see it -- on the lower left-hand corner.

3    A.    They had filed an extension of time to file.

4    Q.    This is -- IRS Memphis received this?

5    A.    Yes.

6    Q.    All right.  August 19.  So they were a little late.  They

7    were within the extension, I guess?

8    A.    Yes.

9    Q.    On the second page, again, because -- the signature is on

10   the second page.  And in addition to the Ophoffs' apparent

11   signatures there, there is a preparer's signature on this one,

12   the one that they originally filed; is that correct?

13   A.    Right.  There's a Matthew P. Fisher out of Broken Arrow,

14   Oklahoma.

15   Q.    Let's go on to 11.  Again, 11 is also for the Ophoffs,

16   Timothy and Linda, 1040X form amended return for the year 1999;

17   is that correct?

18   A.    That's correct.

19         MR. SNOKE:  Move into evidence 11.

20         MR. STILLEY:  No objection.

21         THE COURT:  Be admitted.

22   Q.    (By Mr. Snoke)  What's the filing date on that?

23   A.    This shows -- looks like we received -- there's several

24   received dates.  Looks like February 3rd of 2003.

25   Q.    All right.  That's the earliest one stamped on there that

1    you can find?

2    A.    That's what it appears, yes.

3    Q.    Again, no preparer's signature on the 1040X form?

4    A.    No.

5    Q.    And turning to page 3, the amount of claim of right,

6    compensation for personal labor claimed on this particular 1999

7    1040X form is how much?

8    A.    Deduction for $83,136.

9    Q.    Let's move to Exhibit 11-A.  Is that a transcript covering

10   this year for the Ophoffs?

11   A.    Yes.

12   Q.    The '99 tax year?

13   A.    Yes, it is.

14           MR. SNOKE:  Move into evidence 11-A.

15           MR. STILLEY:  No objection.

16           THE COURT:  Be admitted.

17   Q.    (By Mr. Snoke)  All right.  Let's look at 11-B.  Again,

18   this is another one of these letters indicating that there's no

19   basis in law and that this represents a frivolous position that

20   they've taken for the filing of the 1040X for 1999?

21   A.    Yes, that's correct.

22           MR. SNOKE:  Move into evidence 11-B.

23           MR. STILLEY:  No objection.

24           THE COURT:  Be admitted.

25   Q.    (By Mr. Snoke)  Again, the date, I think, is similar to

1    the ones we've seen earlier, May 23, 2003?

2    A.    Correct.

3    Q.    Down at the bottom of this one, again, it's stamped June

4    26, 2003.  Another familiar date for the Ophoffs?

5    A.    Right.

6    Q.    Same date we just saw on the previous exhibit of theirs?

7    A.    Yes.

8    Q.    And if you'll look at 11-C.  Also a record from the IRS

9    filing, documents filed by the Ophoffs there with the IRS?

10   A.    This appears to have been with the return of this letter.

11   Q.    It also has the same June 26, 2003 stamp on every page --

12   A.    Yes, it does.

13   Q.    -- as did the one for the previous tax year by the

14   Ophoffs; is that correct?

15   A.    Correct.

16           MR. SNOKE:  Move into evidence 11-C.

17           MR. STILLEY:  No objection.

18           THE COURT:  Be admitted.

19   Q.    (By Mr. Snoke)  Again, on this -- I don't know if I asked

20   you about the other one.  But on this one, counting the letter

21   -- well, the letter went out from the IRS, then it comes back

22   on June 26, from them, of 2003; is that correct?

23   A.    Yes.

24   Q.    And apparently with it is Exhibit 11-C, which is the rest

25   of the documents, indicating that they are basically refiling

1  this 1040X which is part of this Exhibit 11-C?

2  A.    They're requesting an appeal.

3  Q.    I'm sorry?

4  A.    They're requesting an appeal.

5  Q.    Yeah, okay.  So it's basically a request for an appeal?

6  A.    Yes.

7  Q.    The 1040X they've gotten there is similar to the one that

8  they previously filed --

9  A.    Yes.

10  Q.    -- for that tax year?

11  A.    That's correct.

12  Q.    I don't know if I asked you the amount on 11, but I think

13  I did.  All right.

14  A.    Yes.

15  Q.    Yeah, I did.

16        All right.  Now, again, on 11-C -- 11-B and C for that

17  matter, but mostly on 11-C there, if you'll look at those

18  documents, again, there's no preparer's signature on the 1040X

19  that's attached to that appeal; is that correct?

20  A.    No, there's not.

21  Q.    And the same amount claimed as compensation for personal

22  labor as a deduction, $83,136 there?

23  A.    That's correct, yes.

24  Q.    Again, Mr. Blackstock -- on those documents, you don't see

25  Mr. Blackstock's name on there anywhere?

A.    No, there's not.

Q.    Let's go on to --

        MR. SNOKE:  Let's see, is 11-C in evidence?  Move in evidence 11-C.

        THE CLERK:  11-C is in evidence.  11-D is not.

Q.    (By Mr. Snoke)  11-D then.  What is that, sir?

A.    11-D is a true copy of the 1999 1040 for Timothy and Linda Ophoff.

Q.    That's their original filing in this case for -- in the '99 tax year, right?

A.    Yes.

        MR. SNOKE:  Move into evidence 11-D then.

        MR. STILLEY:  No objection.

        THE COURT:  Be admitted.

Q.    Let's go to 12.  What is 12?

A.    Twelve is a Form 1040 for Timothy and Linda Ophoff for 2000 tax year.

Q.    And again, it's a true and correct copy of the records you have for the Ophoffs down in Austin --

A.    Yes.

Q.    -- the IRS records?

A.    Yes.

        MR. SNOKE:  Move into evidence 12.

        MR. STILLEY:  No objection.

        THE COURT:  Be admitted.

1  Q.    (By Mr. Snoke)   Now, again, this is a 1040.   I guess we

2  need to look at Exhibit 12-A.   Is that the transcript for the

3  2000 tax year for the Ophoffs?

4  A.    Yes, it is.

5          MR. SNOKE:  Move into evidence 12-A.

6          MR. STILLEY:  No objection.

7          THE COURT:  Be admitted.

8  Q.    (By Mr. Snoke)   Looking at the transcript and at this

9  1040, did it appear that before this 1040 was filed that the

10 Ophoffs had filed anything for the 2000 tax year?

11 A.    No.   This is considered to be the original return for

12 2000.

13 Q.    There hadn't yet been a substitute return done by the IRS

14 as to that year for those people?

15 A.    No.

16 Q.    On the first page of the 1040, what does it show as wages,

17 salaries and tips that they're putting down there?

18 A.    $95,755.

19 Q.    That comes down as a total adjusted income is -- with

20 about $31 of interest comes to pretty much that same amount; is

21 that right?

22 A.    Yes, that's correct.

23 Q.    Then they have -- over there on Schedule A, line 27, which

24 is the third page of this document, what is the amount?

25 A.    Shows $95,755 deduction as compensation for personal

1    labor.

2    Q.    Speaking of that, what is -- back on page 1 -- it doesn't

3    show -- never mind.  On page 1 -- actually, it's page 2, I

4    guess, on a 1040.  Is there any preparer's name down there?

5    A.    No, there is not.

6    Q.    What does it show the occupation of Mr. Ophoff is?

7    A.    He's a painter, and Linda is a teacher.

8    Q.    Let's look at --

9         MR. SNOKE:  Is 12-A in evidence?

10        THE CLERK:  It is.

11   Q.    (By Mr. Snoke)  Let's look at 13.  What is 13?

12   A.    This is a 1040X for 1999 for Latricia Braddy.

13   Q.    Same record from your files?

14   A.    Yes.

15        MR. SNOKE:  Move into evidence 13.

16        MR. STILLEY:  No objection.

17        THE COURT:  Be admitted.

18   Q.    (By Mr. Snoke)  Is 13-A a transcript for this transaction

19   -- I mean for this tax year for this person?

20   A.    Yes, it is.

21   Q.    That's the '99 tax year?

22   A.    That's correct.

23        MR. SNOKE:  Move into evidence 13-A.

24        MR. STILLEY:  No objection.

25        THE COURT:  Be admitted.

1   Q.   (By Mr. Snoke)  Now going back to 13 for Ms. Braddy, this

2   is the first time I think we've heard her name here.  What is

3   the filing date for this for her?

4   A.   Shows February 19th of 2003.

5   Q.   Turning to page -- oh, now this one -- look down here at

6   the preparer.  Who does it say is the preparer on this one?

7   A.   It shows a Richard Blackstock.

8   Q.   All right.  When did he purportedly sign this thing?

9   A.   February 4th of '03.

10  Q.   When did Ms. Braddy purportedly sign this thing?

11  A.   February 9th of '03.

12  Q.   When was it received by the IRS?

13  A.   February 19th of '03.

14  Q.   All right.  And down below there, it says -- below the

15  name Mr. Richard Blackstock there, it says, "Firm's name (or

16  yours if self-employed), address and ZIP code."  There's

17  something typed in there?

18  A.   It shows Much More Foundation on 3171-A South 129th E.

19  Avenue in Tulsa, Oklahoma.

20  Q.   Number 168?

21  A.   Right.

22  Q.   On page 3, the Schedule A, first page of the Schedule A,

23  line 27, what is -- the compensation personal labor, what is

24  the amount under the deduction there?

25  A.   $28,264.

1    Q.   All right.  And does the transcript -- the transcript

2    which is in evidence, does it indicate there had been any kind

3    of a prior filing?

4    A.   Yes.  There was a return filed in 2000 for Latricia

5    Braddy.

6    Q.   And let's see.  All right.  This one was filed, then, in

7    February of '03; is that correct?

8    A.   That's correct.

9    Q.   As a 1040X.  Now let's look at next -- skip down to 14, I

10   guess.  Again, we have another tax form for Latricia Braddy.

11   This is for the 2000 tax year; is that correct?

12   A.   That's correct.

13   Q.   Received by the IRS?

14   A.   Yes, it was.

15          MR. SNOKE:  Move into evidence 13.

16          MR. STILLEY:  No objection.

17          THE COURT:  Be admitted.  Let's take a short break.

18   This is -- I need a little rest from these numbers if you-all

19   don't.  So we'll take about ten minutes.

20       (Whereupon a recess was had.)

21          THE COURT:  You may continue.

22          MR. SNOKE:  Thank you, Your Honor.

23   Q.   (By Mr. Snoke)  Mr. Dean, would you turn back to Exhibit

24   12-A just for a moment.  This is Mr. Timothy and Linda Ophoff's

25   tax return for the 2000 tax year in which they filed a 1040

```
 1  return, we identified it into evidence as an exhibit.  12-A is

 2  the transcript that you identified for that.

 3       Does that show that -- 12-A show that Mr. Ophoff received

 4  a refund based on that claim of right, compensation for labor

 5  deduction 1040 form that he filed, Exhibit 12.

 6  A.   Yes, there was a $6,440 refund that was sent.

 7  Q.   All right.  Now, when we left off here before the break,

 8  we had just moved in Exhibit 14, which was the 2000 year 1040X

 9  form for Latricia Braddy.  I'm going to just do some -- after

10  talking to counsel, I'm going to do some quick movement here.

11       MR. SNOKE:  I'm going to move into evidence at this

12  time Exhibit 14-A, which is the transcript for the 2000 tax

13  year for Latricia Braddy; 15, which is the 2002 Form 1040X for

14  Latricia Braddy; 15-A, which is a transcript for 2000 tax year

15  for Latricia Braddy.  It's Braddy, I guess.  16, which is the

16  2001 Form 1040X filed by Latricia Braddy for the 2001 tax year;

17  16-A, the transcript for the 2001 tax year for Latricia

18  Braddy.

19       17, which is the 1999 Form 1040X return for Franklin

20  Warlick and Denise Warlick for the 1999 tax year; 17-A, the

21  transcript of account for the 1999 tax year for Franklin and

22  Denise Warlick; 18, which is the 2000 Form 1040X tax return for

23  the 2000 year for Franklin and Denise Warlick; 18-A, the

24  transcript for that 2000 tax year for Franklin and Denise

25  Warlick; 18-D, which is a 2000 -- the original 2000 1040X tax
```

1 year for the year 2000 received by the IRS; 19, which is a 2001
2 tax year 1040X tax return for Franklin and Denise Warlick;
3 19-A, the transcript for Denise and Franklin Warlick for the
4 2001 tax year.

5     20, which is the -- a 1999 Form 1040X tax return for a
6 Anthony and Cheryl Bowers; 20-A, the transcript for the 1999
7 tax year for Anthony and Cheryl Bowers; 20-B, which is a 1999
8 Form 1040X tax return for Anthony and Cheryl Bowers which was
9 attached as an appeal of Exhibit 20; 20-D, which is the 1999
10 Form 1040, the original 1040 return filed for 1999 tax year for
11 Anthony and Cheryl Bowers for the 1999 year.

12     21, which is the 1999 Form 1040X tax return filed by a
13 Jeremy M. Linam; 21-A, the 1999 transcript of account for the
14 1999 tax year for Mr. Linam; 21-G, an E-filed 1999 Form 1040
15 tax return filed originally by Mr. Linam before he filed the
16 1040X as 21-G.

17     22, which is a 1999 Form 1040 tax return for a Michael
18 Kiselak K-I-S-E-L-A-K; 22-A, the transcript for that 1999 tax
19 account for Mr. Kiselak; 23, which is the 2001 Form 1040 tax
20 return filed by Mr. Michael Kiselak for the 2001 year; and
21 23-A, which is the transcript of account for 2001 year for
22 Mr. Michael Kiselak; 24, which is the -- a 1040 tax return for
23 Michael Kiselak for the 2000 tax year; 24-A, the transcript for
24 that tax year, the year 2000 tax year, for Mr. Michael
25 Kiselak.

 1        25, which is the -- a 1999 Form 1040X, that is a 1040X for
 2   the 1999 tax year filed by Ronald and Donna Cantrell; 25-A, the
 3   transcript for that 1999 tax account for Ronald and Donna
 4   Cantrell; 25-C is a 1999 Form 1040X tax return again filed as
 5   an appeal by Ronald and Donna Cantrell for the 1999 tax year,
 6   25-C, that is; 26, which is the 1040X tax return for Ronald and
 7   Donna Cantrell for the 2000 tax year; 26-A, the transcript for
 8   that 2000 tax year account for Ronald and Donna Cantrell; 26-E,
 9   which is another copy of a 2000 Form 1040X filed by Ron and
10   Donna Cantrell as an appeal of the denial of the original 1040X
11   for the 2000 tax year; and 27, which is Ronald and Donna
12   Cantrell again, a 1040X return filed for the 2001 tax year;
13   27-A, the transcript for the 2001 tax account for Ronald and
14   Donna Cantrell.  There is no 27-B.

15        27-C is an IRS letter from Ronald and Donna Cantrell
16   dated -- originally went out to them 12/12/03, which they
17   returned withdrawing their filing of the 1040X for the 2001 tax
18   year.  27-C, that is.

19        27-D is actually the letter going out to them.  And 27-D
20   -- 27-D is the letter going out to them, the same letter.  Then
21   27-C is the letter coming back with the received stamp by the
22   IRS.  Moving that into evidence, 27-D.

23        27-E is the 2001 Form 1040 tax return for Ronald and
24   Donald -- Ronald and Donna Cantrell, and that's for the 2001
25   tax year, the original tax return they filed, before they filed

1  the Form 1040X.

2      Exhibit 28, which is the 2001 tax year for Christopher and

3  Mary McNabb, 1040X form filed by them June of '03.  28-A, the

4  transcript for their account, Christopher and Mary McNabb, for

5  the 2001 tax year.  28-B, an IRS letter dated 4/2/04 to

6  Christopher and Mary McNabb with the usual language on it that

7  we've seen before here.  And it was received back by the IRS

8  with their appeal -- that's 28-B -- of the denial of their

9  earlier filed 1040X for 2001.

10      Exhibit 28-E is the original 1040 tax return filed by

11  Christopher Mary McNabb for the 2001 tax year.  Exhibit 29 is

12  the 1040X amended tax return for the 2002 tax year for

13  Christopher and Mary McNabb.  28-A is a transcript for the 2002

14  tax year for Christopher and Mary McNabb.

15            THE COURT:  You said 28-A.

16            MR. SNOKE:  28-A.  I'm sorry.  28-B -- I'm sorry,

17  never mind 28-B.  29 -- I'm sorry, I said 28, didn't I?

18      29 -- that was 29-A.

19      29-C is the -- we're moving into evidence, which is the

20  original Form 1040 tax return for Christopher and Mary McNabb

21  for the 2002 tax year filed before Exhibit 29, which was the

22  amended 1040X return.

23      Exhibit 30 is the -- is a 1040 tax return for Craig and

24  Jennifer Van Patten filed for the 2001 tax year in June of

25  2003.

```
 1        30-A is the transcript for the 2001 tax year for Craig and
 2   Jennifer Van Patten; 31 is the -- is a 1040 tax return for
 3   Jennifer and Craig Van Patten filed for the 2002 tax year in
 4   June of 2003; 31-A is the 2002 transcript of the account for
 5   Craig and Jennifer Van Patten for the 2002 tax year.
 6        32 is the -- is a 1040 tax return for Craig and Jennifer
 7   Van Patten filed in 2000 -- for the 2000 tax year in June of
 8   2003; 32-A, a transcript of the 2000 tax year for Craig and
 9   Jennifer Van Patten; 32-B is a 2000 1040 tax return for Craig
10   and Jennifer Van Patten for the 2000 tax year -- just a second
11   here.  That one, I think, was filed with an appeal.  Anyway,
12   it's 32-B.
13        And I think --
14             MR. STILLEY:  Your Honor, we would have no objection
15   to all those that he has stated for those to be admitted.  I
16   would like to approach.  I think maybe we could expedite some
17   other things even a little bit more.
18             THE COURT:  All right.
19        (The following proceedings were had at the bench, out of
20   the hearing of the jury.)
21             THE COURT:  Is that the end of your offer?
22             MR. SNOKE:  I'm getting there.
23             MR. STILLEY:  I want to make my record up here.
24             THE COURT:  Was that the end of your offer 32-B, or
25   are there more?
```

1          MR. SNOKE:  I've got more, but this is the end of the
2   first batch.
3          MR. STILLEY:  Your Honor, the reason I brought that
4   up at this point in time is because I think that the other
5   exhibits -- I know where he's going next, and I think that that
6   relates to uncharged conduct, and I want to make an objection
7   outside the jury.
8          THE COURT:  Okay.
9          MR. SNOKE:  I guess he's objecting in advance to some
10  documents that Collins is going to be testifying to, the next
11  witness that we're taking, in the search of the house, subject
12  to a search warrant for which there's been no motion to
13  suppress filed.
14         MR. STILLEY:  Actually, no, Your Honor, it's Exhibit
15  No. 58, which is a Mr. Dean document.  So if you'll turn to 58,
16  you'll see what I'm talking about.
17         MR. SNOKE:  58.
18         MR. STILLEY:  It's Bob Dean.
19         MS. RADFORD:  You mean the one that shows knowledge
20  that he knew what he was doing?
21         MR. STILLEY:  Well, it's uncharged conduct.  They
22  could have charged him with it, and didn't.  And I just
23  respectfully submit that this doesn't show anything about
24  knowledge.
25         THE COURT:  There's no offer yet on this.  He's got

```
 1   an offer that goes through 32-B.
 2              MR. STILLEY:  We stipulate to that admission.  The
 3   only thing that we want to look at is No. 58 is a 2004 1040X
 4   tax return for Richard Blackstock.  There's no charge on that.
 5              THE COURT:  Okay.  When he offers that, we'll discuss
 6   it.
 7              MR. SNOKE:  I can offer those, what we've done to
 8   now.  And if the Court wants to take this up after, we can do
 9   it.
10              THE COURT:  Are there any other that are not objected
11   to?
12              MR. SNOKE:  I have Mr. Dean down to identify and talk
13   about Exhibit 41, 42, 43, then we get to the series of 56
14   through 63, which is -- I think that's the ones he's objecting
15   to, or are you just objecting to 58?  You just said 58 a minute
16   ago.
17              MR. STILLEY:  I'm objecting to 58 through 63.  And on
18   these others -- Your Honor, I need to look at Exhibit 42 and 43
19   because I don't think that I'll object to those, but --
20              THE COURT:  Okay.
21              MR. STILLEY:  I do object to --
22              THE COURT:  We'll take care of it.
23              MR. STILLEY:  Your Honor, Exhibits 56 through 63 have
24   to do with --
25              THE COURT:  I don't want to hear it now.
```

```
1           (The following proceedings were had in the presence and
2    hearing of the jury.)
3           THE COURT:  Now, it's my understanding that these
4    exhibits are to be admitted without objection, 14-A, 15, 15-A,
5    16, 16-A, 17, 17-A, 18, 18-A, 18-D, 19, 19-A, 20, 20-B, 20-D,
6    21, 21-A, 21-G, 22, 22-A, 23, 23-A, 24, 24-A, 25, 25-A, 25-C,
7    26, 26-A, 26-E, 27, 27-A, 27-C, 27-D, 27-E, 28, 28-A, 28-B,
8    28-E, 29, 29-A, 29-C, 30, 30-A, 31, 31-A, 32, 32-A, 32-B.
9        20-A, is that also one of them?
10          MR. SNOKE:  20-A should be, yes, Your Honor.
11          THE COURT:  Very well.
12          MR. SNOKE:  I failed to move in one other, which is
13   19-C, a 2001 Form 1040X for Franklin and Denise Warlick.
14          THE COURT:  19-C.  Anything else?
15          MR. SNOKE:  19-C.
16          MR. STILLEY:  Beg your pardon?
17          MR. SNOKE:  19-C.
18          MR. STILLEY:  No objection to that.
19          THE COURT:  Any objections to the ones that I've read
20   off there?
21          MR. STILLEY:  No, Your Honor.
22          THE COURT:  Very well.  Those will all be admitted.
23          MR. SNOKE:  And 19-C; is that correct?
24          THE COURT:  That's correct.
25          MR. SNOKE:  All right.
```

1  Q.    (By Mr. Snoke)    Now, if you will look at exhibits --
2  start with Exhibit 41, please, sir. Can you tell us if you
3  recognize Exhibit 41?

4  A.    41 is a 1040X for 2000 tax year for Richard Blackstock.

5  Q.    I'm sorry. Strike that. I need you to look at --

6              MR. SNOKE: May I have a minute, Your Honor?

7              THE COURT: You may.

8  Q.    (By Mr. Snoke) Mr. Dean, you talked about a substitute
9  for return earlier.

10  A.    Yes.

11  Q.    Can you tell the Court and the jury what that is.

12  A.    A substitute for a return is actually the start of a
13  process where the Internal Revenue Service has received
14  third-party information or other information as far as someone
15  having income, but not having filed a tax return. The posting
16  is made to the -- what we call the tax module for that specific
17  year so that -- and at that time also a letter is mailed to the
18  taxpayer to say this is the information we have showing that
19  you have this income and this is the proposed tax.

20       The posting on their substitute for return does a couple
21  of things. It creates that tax module, and it also puts other
22  areas of the IRS on notice so in case a 1040X or a 1040 comes
23  in for that taxpayer for that year, it would go what we call
24  unpostful; it can't post to the account because of that
25  substitute for return.

1        That document that's sent in by the taxpayer will go to --
2   whether it's in examination or collection, for someone to look
3   and see if the information on that substitute for return is
4   valid.  And if it is, then that information will be posted.
5   Otherwise, if the IRS doesn't receive any information back from
6   the taxpayer, there would be what we call a default adjustment
7   made to the account to assess the amount of tax due that has
8   been calculated.

9        So then it would go into a collection status from that
10  point.

11       MR. SNOKE:  I don't believe I have any other
12  questions of this witness at this time.

13       THE COURT:  Members of the jury, we'll break for the
14  day.  Please remember the Court's admonitions.  You're not to
15  discuss this case with anyone or allow anyone to discuss it
16  with you.  That means basically that we don't want you to have
17  discussions about the case in the jury room with each other
18  yet.  And really the reason for that -- I'm not sure that
19  there's a great reason for it, but the main reason is we don't
20  want people to start making up their minds until the case has
21  been fully presented.  And we'd also -- you know, you have to
22  deliberate as a group, so we can't have smaller groups breaking
23  off and having discussions.  Everything has to be from your
24  collective wisdom and your collective memories.

25       I also don't want you to discuss the case with anyone at

1  your home.  It's not so much what you would say, it's -- what I
2  try to avoid is having someone else's opinions grafted onto
3  yours.  If you start a discussion, then someone is going to
4  tell you what their opinion is or make some observations
5  without having been here and without seeing the witnesses and
6  without knowing anything really about the case.  So I ask you
7  just not to talk with anyone about the case, allow anyone to
8  talk to you about the case.

9       You must not do any research or investigation on your
10 own.  And as I indicated, you have to keep an open mind until
11 we get to the end of the case and you deliberate together.

12      I'll see you at 9:30 in the morning.  Thank you.

13          (The following proceedings were had outside the presence
14 of the jury.)

15          THE COURT:  Be seated.  Now let's get to the
16 problems.

17          MR. SNOKE:  Your Honor, the other exhibits that
18 counsel was talking about, he mentioned 58, it's actually -- I
19 believe would begin with 56 and go through -- well, 56 through
20 58 and then 61 through 63 cover certified accounts similar to
21 what we've had in the A exhibits of the previous exhibits
22 here.  They're transcripts showing -- 56 is a transcript
23 showing that Mr. Blackstock did not file any return for the
24 time period from '89 through '98, that's a ten-year period,
25 which was mentioned in our 404(b) -- one of our 404(b) things.

1   57 is a transcript of account for the '99 year showing
2   that he did, in fact, show -- file a 1040X substitute -- a
3   substitute return was filed for him.  Then he filed a 1040X
4   return for that year, which is part of our evidence in the case
5   during the time period because he filed that in December of
6   '02.  He filed both a 1040X for the two 2000 and 2000 (sic) tax
7   years.

8   Exhibit 58 is a 1040X tax return filed by Mr. Blackstock
9   under this same theory, claim of right, for the 2000 tax year
10  for himself, which he filed in December of 2002, the time
11  period of our indictment.

12  Exhibit 59 is a transcript of account for Mr. Blackstock
13  for the 2000 tax year.  And then 60, beginning with 60, it's
14  the 2001 account transcript for Mr. Blackstock showing he
15  didn't file, but they filed a substitute for return for him.

16  61, a transcript of account for the 2002 tax year for
17  Mr. Blackstock showing no filing for that year.  And 62 and 63
18  are for the 2003 and 2004 tax years.

19  We believe that at least -- the fact that Mr. Blackstock
20  is a nonfiler -- in fact, we would argue that he's actually --
21  there's evidence that he's more than that, actually a tax
22  protestor, but he's certainly a nonfiler in the parlance of the
23  Internal Revenue Service, and we've cited cases there, I think,
24  that show that that nonfiling status is relevant on the
25  willfulness issue.

1    And I'd cite the Court to the -- in addition to the case

2  that we cited in our notice of res gestae and 404(b) -- some of

3  this is res gestae because it happened during the time period

4  of the indictment and he filed the exact same kind of claim of

5  right tax returns for the '99 and 2000 tax years in December of

6  2002 that he was filing for everybody else that the Court has

7  just seen evidence on in the previous exhibits -- a case of

8  United States vs. Fingado, F-I-N-G-A-D-O, at 934 F.2d 1163,

9  Tenth Circuit, 1991, I would suggest holds the proposition that

10  evidence of defendant's failure to file in prior years was

11  admissible on the issue of willfulness and good faith, both of

12  which have been addressed in the opening remarks of the

13  defendant.  Of course, willfulness is an issue, one of the

14  elements of the crime that we have charged him with in these 32

15  counts.

16    We would submit that Exhibit 57, 58 and 59 are all res

17  gestae, they all occurred -- cover the period for the tax years

18  in which he actually filed one of these 1040X forms for

19  himself, and he filed them during the time period in the

20  indictment.

21    The other exhibits, that would be 60 through 63 and

22  Exhibit 56, covering the ten years before this time period, we

23  would submit that those would be admissible under 404(b) to

24  show his willfulness, his lack of -- his intent and knowledge

25  and common scheme and plan as set forth in the 32 counts of the

1   indictment -- the superseding indictment.

2           THE COURT:  Mr. Stilley.

3           MR. STILLEY:  Your Honor, actually, as to the --

4   Your Honor, actually, the government has just about persuaded

5   me that they would have a basis for entering these, the returns

6   that were filed, but for the limited purpose of showing the

7   state of mind of the defendant.  I think if we had a limiting

8   instruction on that, that those could be admitted.

9           And with respect to the failure to file, the issue that I

10  see there is uncharged conduct that could be excessively

11  prejudicial to the jury.

12          Now, I think that we've already taken this -- the PRA

13  issue already seems to be proper before the -- for questioning

14  before the jury based upon the Court's rulings, but if this --

15  if these prior failures to file are raised, it would seem that

16  that would just make the PRA even more relevant to the

17  discussion that it already is.

18          So with that said, I'll let the Court decide as to whether

19  these need to be allowed in or not.

20          THE COURT:  The exhibits, once the foundation is

21  laid, I don't know whether you're going to want to agree to

22  that or not, but the exhibits will be admitted as either res

23  gestae or 404(b) and with an appropriate limiting instruction.

24          I want to hear some more about this PRA argument.  I keep

25  looking at these cases, and I'm still not sure exactly what

1    your argument is.

2          MR. STILLEY:  Okay, Judge, let me make a run at this

3    then.  I think one of the central issues that we've got here is

4    that we've got a new PRA, whereas the government keeps on

5    addressing the old PRA.

6          THE COURT:  As does the IRS.

7          MR. STILLEY:  Yes, the IRS does that.  And I would

8    respectfully that that --

9          THE COURT:  There's that 11-year period that you've

10   talked about, though, you haven't produced one case that

11   indicates that there's a different interpretation out there.

12         MR. STILLEY:  Well, actually, Your Honor, this is --

13   it probably would be helpful if I would supply another brief on

14   this.  Would the Court like me to supply another brief so I can

15   just lay these things out?

16         THE COURT:  That will be fine.

17         MR. STILLEY:  Very well.  And I know it seems like

18   that there would be other cases like that.  Really -- and maybe

19   this is not what the Court is looking for, but I had a case in

20   Peoria, Illinois just about a month or so ago, where that the

21   PRA issue was raised and the government just dismissed the case

22   with prejudice.

23         And I know that that is not, you know, Tenth Circuit case

24   law or anything like that, but it does indicate pretty strongly

25   in my mind -- and let me say this:  The charges were willful

1    failure to file and tax evasion.

2        And also, the -- basically all we had presented as far as

3    a defense was PRA. And that indicates to me that the

4    government thinks it's a strong defense, otherwise, why would

5    they dismiss? And they dismissed on a Friday before the Monday

6    when the case was supposed to go to trial.

7        What I don't see is any case since 1995 that says that you

8    can't use this. And before we get too far afield here, let me

9    bring out some issues that help us build a case as to whether

10   or not this is a valid defense.

11       The IRS has, as I think everybody will agree, put the same

12   OMB number on the 1040 for about 25, 26 years. Now, it was

13   either 2005 or 2006 -- and I can provide you with the correct

14   information in a brief -- but the IRS then decided under

15   pressure, there was pressure -- Your Honor, I filed a brief at

16   the Tenth Circuit that was dismissed for other reasons -- I

17   didn't file it, but I drafted it and there was another attorney

18   that filed it, and these issues are looming large, and the

19   government knows that these issues are looming large.

20       And in response to that, or at least in the face of that,

21   the IRS decided that they would put the same OMB number on just

22   a whole slew of tax forms, 1040X, the 1040, well, just about

23   everything that's even -- even the 2555 foreign-earned income,

24   they just slap the number on everything, which seems to me to

25   be almost a concession that the IRS does not have their ducks

1    in a row.

2        If they're really going to contend that they can use one

3    number to collect all this information, make changes every

4    year, have no expiration date, not put the instruction on the

5    form which is required by the law, and commit a whole host of

6    other violations of the PRA, but somehow they still comply with

7    the PRA, I'd like to hear how that they can say that.  It does

8    not make any sense.  The IRS has taken upon itself to do things

9    that are inconsistent with obedience to the law inconsistent

10   with compliance.

11       If they had -- in response to arguments -- that there was

12   a problem with the form, if they had backed up and made sure

13   that all the information requested was supported by the

14   statutes and by the Constitution, and put a form with an

15   expiration number on it, then you would say, well, we're moving

16   the right direction, the government is trying to obey the

17   requirements that are out there.  What you see is the

18   opposite.  You see them doing things that just don't make any

19   sense at all.

20       Respectfully, I would submit that despite the fact that we

21   don't have case law or -- now, when I say we don't have case

22   law, I'm saying that there is a paucity of case law on the

23   subject; however, I think that we're soon going to have the

24   case law and the factors that I've been talking to you about

25   are going to play very heavily in this.

1           THE COURT:  Let me ask you about this United States

2  vs. Sasser, if you're familiar with it; if not, let me have you

3  look at it over this evening.  974 F.2d 1544.

4           MR. STILLEY:  What year was that?

5           THE COURT:  It's a 1992 case.  And the question I

6  want to ask you after you've had a chance to look at it --

7           MR. STILLEY:  That's out of the Tenth Circuit?

8           THE COURT:  Yes.

9           -- is whether they -- and they have a failure to

10  file versus filing falsely distinction.  And whether or not

11  that -- whether there's any reason that this distinction would

12  not also apply to the 1995 version of the PRA.

13           MR. STILLEY:  Absolutely, Your Honor.  I can answer

14  that easily.  There's a Law Review article about this, about

15  the new and more powerful PRA of 1995.  And what really, really

16  makes the change there -- and you can see it from this Internal

17  Revenue bulletin.  When you compare the Internal Revenue

18  bulletin with the 3512 of the 1995 PRA, you'll see that the

19  Internal Revenue bulletin says -- and I'm looking down at about

20  the middle of the second paragraph.  It says, "The public

21  protection provision of the PRA provides that no person shall

22  be subject to any penalty for failing to maintain or provide

23  information to any agency if the information collection request

24  involved does not display a current control number assigned by

25  the Office of Management and Budget," OMB.

1    Now, I can agree with that as to the 1980 Act. And that's

2  what they're talking about is the 1980 Act. But when you look

3  at the 1995 Act, listen to this, under subsection (a), it says,

4  "Notwithstanding any other provision of law, no person shall be

5  subject to any penalty for failing to comply with a collection

6  of information that is subject to this chapter if..." -- and

7  then they go on to say what the "if" involves.

8    But the operative words there are "a failure to comply."

9  And what you have here is an allegation of a failure to

10  comply. It's not a failure to fill out and submit the form;

11  they're saying that the attempted compliance was inadequate or

12  improper.

13    Now, before we go too far here, let's stop and think about

14  the tools that the government has in their arsenal. They can

15  file charges for tax evasion, filing a false return.

16    In this case, they have chosen 7206 -- 7206(2). And my

17  reading of that statute is that the requirements there would

18  fall under this provision that says you can't have a penalty

19  for a failure to comply.

20    THE COURT: Okay. Anything else?

21    MR. STILLEY: I think that's all I've got. And I'll

22  try to get you a brief on -- through the electronic filing

23  system as quickly as I reasonably can.

24    THE COURT: Very well. Anything else, Mr. Snoke?

25    MR. SNOKE: Your Honor, I just wanted to inquire.

```
 1   This last argument, is it based on these exhibits as to
 2   Mr. Blackstock's failure to file evidence that we were talking
 3   about here, or is he again talking about the motion to dismiss
 4   where we're not talking about Mr. Blackstock's failure to file,
 5   but the taxpayers' actual act of filing that we've just gone
 6   through all these exhibits on?  I didn't understand exactly
 7   what the Court was --
 8           THE COURT:  I assume that it went back to the motion
 9   to dismiss.
10           MR. SNOKE:  Again, then our argument hasn't really
11   changed that -- on the motion to dismiss issue, Mr. Blackstock
12   is not the aggrieved party to be complaining about violation of
13   the Paperwork Reduction Act, if there was one.  Of course, the
14   very case that he cited to the Court, Dawes, he indicates that
15   they didn't believe that Congress intended the IRS laws to be
16   circumvented by the fact that the 1040 form may not have an OMB
17   number on it.
18       But anyway, as I pointed out there to the Court before,
19   what we have here is not a case in a 7206(1) where
20   Mr. Blackstock is charged with failure to file, which I think
21   that the Court will find most of these cases are that have been
22   cited by defendant, nor is it a case where we have charged
23   Mr. Ophoff for failure to file under 7206(1).  It is a case
24   under 7206(2), and we don't have a situation where we're
25   charging somebody with failure to file.
```

1      These tax returns got filed.  They got filed by these

2  witnesses that the Court's about to hear.  They got filed with

3  the assistance of Mr. Blackstock, who filled them out in large

4  part, if not wholly for the taxpayers.

5           THE COURT:  That's why I asked counsel the

6  question --

7           MR. SNOKE:  It's a totally different issue -- I'm

8  sorry.

9           THE COURT:  That's why I asked the question of

10  counsel about failure to file versus filing falsely.

11           MR. SNOKE:  Right.  And the government's argument is

12  that it's --

13           THE COURT:  You're not educating me.  Okay.  Thank

14  you.  See you in the morning.

15

16                    REPORTER'S CERTIFICATE

17  I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT

18  TRANSCRIPT OF THE PROCEEDINGS IN THE ABOVE-ENTITLED

19  MATTER.

20

21                         S/Terri Beeler
                         Terri Beeler, RMR
22                         United States Court Reporter

23

24

25